### Thomas J. Wood vs. Timothy Dudley Jr.

Distinction between a mortgage and a pledge. A mortgagor of a personal chattel cannot sustain trover against his mortgagee, unless the chattel be redeemed.

This was an action of trover for a horse.—Plea, *the general issue and trial by jury.*

On the trial the defendant produced the following contract:—

"*Barre, February* 25, 1834.

" Sold to Emerson, Dudley and Torrey, one bay mare for eleven dollars and forty-five cents, for which I have received my pay in cash, and deliver said mare to said Emerson, Dudley and Torrey as their own property. The condition of this bill of sale is such, that if I redeem said mare within four weeks, and pay the expense of keeping, with the above named sum of eleven dollars and forty-five cents and interest, then this bill of sale to be void, otherwise to remain in full force to convey said mare to Emerson, Dudley and Torrey, as witness, my hand.

(Signed,)                                    T. J. W."

The plaintiff offered testimony tending to show, that at the time of entering into this contract the horse in question, was of the value of sixty dollars ; that he was owing the defendant the amount named in the contract ; that no other discharge of that debt was given, than would result from the contract, and that the horse was delivered over to defendant at the time of executing the contract ; that plaintiff resided in the immediate vicinity of the defendant, and that the defendant and another of the firm referred to in the contract, without his permission, took the horse in question within the first four weeks, and the sleighing bad, drove her from Barre to Montpelier a distance of eight or nine miles and back, by which she was very materially injured and depreciated in value.

The plaintiff also offered testimony tending to show that after this time and before the expiration of the time set in the aforesaid contract for the payment of said sum of $11,45, that he offered to pay defendant that sum on condition that defendant would pay him

WASHINGTON,
March,
1836
Wood
vs.
Dudley.

for the damage done the horse, to which offier the defendant replied, let it be, and see how the mare comes out ; and afterwards, and without any thing further passing between the parties, the defendant in the month of August after, sold the mare.

The defendant offered testimony tending to show, that the mare was of no more than the value of $40 or $45, when he received her, and that after that time the plaintiff, by defendant's consent, loaned her to go to Plainfield, by which she was injured, and that she was not materially injured by the use to Montpelier aforesaid, that the plaintiff gave defendant permission to use the mare to the extent he did use her ; that the plaintiff, at the time he offered to pay the sum named in the contract aforesaid, absolutely refused even to pay the sum, or to close the contract, unless upon the condition that defendant would pay him damages for the use of the mare as aforesaid, and that he afterwards sold the mare to pay the debt, and had always held himself ready to account for any balance which was in his hands.

The court charged the jury, that if they found the fact, that the mare at the time of the delivery to the defendant was of a very disproportionate value to the amount of the debt, that is, if she was then worth from $40 to $60, and that the debt being only eleven or twelve dollars, and that no discharge of the debt was given except what would result from the transaction itself, that the contract would be in law a mere pawn or pledge, of the property to secure the debt, and would not vest the general property in defendant.

That as to the right of the pawnee to use the thing pawned, almost every case must depend upon its own peculiar circumstances, and the established custom of the country upon that subject. As this contract was to run but a short time, as there was an express stipulation that plaintiff in case of redeeming should pay the whole expense of keeping as well as the debt, and as the plaintiff himself was admitted to reside in the immediate vicinity if they believed that fact, then the defendant had no right by this contract to put the mare to any such use as would amount to *service*, mere use about town which would be for the benefit of the mare, would not amount to a conversion, but if they found the fact proved that the plaintiff was in the immediate vicinity, and might have been consulted, and was not, and gave no permission to defendant, either for this use or to use the mare generally, and under these circumstances the defendant took the mare and drove her with two persons, and out of town a distance of eight or nine miles and the

WASHINGTON,
March,
1836

Wood
vs.
Dudley.

sleighing bad, the court considered that such a use of the mare as by the terms of the contract under the circumstances the defendant was not warranted in putting her to, and would amount to a conversion of the property, unless there was some uniform custom of the country applicable to all such contracts, by which the defendant would have a right to use a horse pawned for the security of a debt, which was not attempted to be shown. But if the plaintiff gave consent, either general or express, or if the jury thought from the conduct or relation of the parties at the time, or their assertions as proved, they could be fairly warranted in inferring that the plaintiff gave consent, then the fact that the mare was injured in the use through the neglect of defendant, would not amount to a conversion. If they found a conversion here as above described, the plaintiff would be entitled to recover the value of the mare at the time of the conversion, deducting the debt and interest and keeping, to which defendant assented. As to the rule of damages, if they did not find a conversion here as declared, they would enquire further. If there had been no conversion previous to the offer to pay the debt, then the plaintiff had no right to annex any such condition to his tender, as he did, and the tender would amount to nothing, unless the defendant gave the plaintiff to understand and so intended to be understood that he would extend the time of payment and thereby induce the plaintiff to omit to make payment or tender at that time. If this was done the time would be extended. And if so, and the defendant sold the mare within the extended time, this would amount to a conversion. If no definite time was named, then it would be the duty of the plaintiff to redeem within a reasonable time. That the sale would not amount to a conversion unless the defendant intended to give the plaintiff to understand he would wait a longer time than he did wait, and then sold the mare without notice to defendant. If so, it would amount to a conversion. The jury would consider what was said and done and whether the plaintiff was reasonably warranted in expecting the time was extended beyond the 19th of August. If not, the sale would not amount to a conversion.

They would also consider whether the plaintiff gave the defendant to understand and so intended at the time of the offer to pay the money that he never would settle the matter unless upon the condition he then named ; and the defendant's reply was made with reference to this understanding. If so, the defendant had a right to sell the mare in a prudent manner, and the sale would not

WASHINGTON,
*March,*
1836.

Wood
*vs.*
Dudley.

amount to a conversion. If they found a conversion in the last point, they would adopt the same rule of damages, giving only the value of the property at the time of the conversion, with the same deduction. The jury gave a verdict for the plaintiff. Defendant excepted.

*Upham and Kinsman for defendant.*—1. The bill of sale from Wood to Emerson, Dudley & Torrey, was a mortgage of the mare in question, for the payment of $11 45.—1 Pow. on Mort. 3 ib. 33, *n. a.*—4 Kent's Com. 132—*Burrow* vs. *Paxton*, 5 John. R. 261—*Holmes et al.* vs. *Crane*, 2 Pick. R. 607—*Brown* vs. *Bennett et al.* 8 John. R. 96—*Cortelyon* vs. *Lansing,* 2 N. Y. Cases in Error, 200—*Marsh* vs. *Lawrence*, 4 Cow. R. 461— *Gifford* vs. *Ford*, 5 Vt. R. 531—Story on Bailment, 197—*Ackley* vs. *Finch,* 7 Cow. 290.

2. A mortgage of goods differs from a pledge or pawn, in this, that the former is a conveyance of title upon condition, and it becomes an absolute interest at law if not redeemed by a given time, and it may be valid without actual delivery.—4 Kent's Com. 132.

In the case of a pawn, if no time be fixed by contract, the pawnor may redeem it at any time; and though a day of payment be fixed, he may redeem it after the day.—*id.* 132.

3. If the county court were right in deciding that the mare in question was pawned to Emerson, Dudley & Torry for the sum of $11 45, they were incorrect in deciding that the pawnees had no right to use her. If property pawned be such as not to be worse for use, as jewels, ear-rings, &c., it may be used by the pawnee.— 2 Kent's Com. 450.

So, if a horse be pawned, he may be lawfully used by the pawnee, and it is no conversion.—4 Kent's Com. 450—Story on Bailment, 235, 236.

4. Driving the mare from Barre to Montpelier, before the expiration of the four weeks given to redeem her, was no conversion; and the jury should so have been charged in the court below. If the defendant injured her by immoderately driving, he may be sued for such injury in a proper action on the case, but trover will not lie.

5. The plaintiff cannot maintain trover for the mare before he pays or tenders the money for which she was mortgaged or pledged.—1 Chit. Pl. 175, and cases there cited.

6. If the time of payment was extended, the plaintiff should show that he tendered the money within the extended time; and

 

WASHINGTON,
March,
1836.

Wood
vs.
Dudley.

if no particular time was agreed upon, he should show that he paid or tendered the sum due in a reasonable time.

7. The sale of the mare by the defendant, in the month of August, 1834, was no conversion.—2 Kent's Com. 579—2 Vt. R. 309, *Bullard* vs. *Billings*.

*Bell and L. B. Peck for plaintiff.*—1. The contract, under which the defendant claims, was a pledge and not a mortgage of the mare. Courts, in all cases of contracts, look to the intention of the parties, and give such a construction to the contract as the parties intended it should receive, if it can be done without violating any settled principle of law. The contract, in the present case, was drawn up by the parties, and, as might be expected, is very informal and loosely drawn. If we recur to the circumstances attending the execution of the contract, there is not much room to doubt, that the parties intended the contract should be in the nature of a pledge. The mare was worth some sixty dollars, and was delivered to secure the payment of an antecedent debt of only some eleven dollars. It is hardly to be supposed that either party contemplated that the mare should become the absolute property of the defendant, in case the debt was not paid within the time limited by the contract. This would be the result, if the contract is regarded as a mortgage. To give this construction to the contract, would violate the intention of the parties, and work a positive injury to the plaintiff.

2. If the contract was a pledge, this action may be well sustained. The defendant was guilty of a conversion by using the mare. The contract contained the stipulation that the plaintiff should pay her keeping, which removes all implied understanding, that the defendant was authorized to use her. He would not have been justified in driving her, in the manner he drove her to Montpelier, under any circumstances. Such violent use would be a conversion.—2 Cain's Cas. in Error, 200.

3. The sale of the mare without notice to the plaintiff, was a conversion beyond all question ; and the defendant having put it out of his power to return her, the plaintiff was not required to tender the amount for which she was pledged. On this point, all the cases agree.—2 Cain's Cas. in Error, 206—Story on Bailments, 236.

The opinion of the court was delivered by

PHELPS, J.—The only question in this case is, whether the contract in question be a mortgage or a pledge. If the former, the

plaintiff cannot recover; but if the latter, he may recover, provided the proof makes out a conversion.

Washington,
March,
1836.
Wood
vs.
Dudley.

The distinction between a mortgage and a pledge, is important, as the effects of each are widely different.   In a mortgage of a personal chattel, the general property passes to the mortgagee, subject to be redeemed, according to the terms of the contract; and if not redeemed within the time limited, the property becomes absolute in the mortgagee.   The consequence is, that the mortgagee may sell or otherwise dispose of the chattel immediately.   But in case of a pledge, the general property does not pass, but remains in the pawnor,—the pawnee having only a special property, or lien; and in this case, although the pledge may not be redeemed by the time limited, yet it retains the character of a pledge still.

Although the nature and consequences of these different contracts are thus different, yet it is often a matter of no little difficulty to determine whether a transaction be one or the other; and I know of no criterion, on this point, except the intention of the parties as gathered from their contract.   If the contract be in writing, it becomes a question of construction.   The written contract is in these words:  "Sold, Barre Feb. 25, 1834, to Emerson, Dudley & Torrey, one bay mare, for eleven dollars and forty-five cents. for which I have received my pay in cash, and delivered said mare  to said Emerson, Dudley & Torrey as their own property.   The condition of this bill of sale is such, that if I redeem said mare within four weeks, and pay the expense of keeping, with the above named sum of eleven dollars and forty-five cents and interest, then this bill of sale to be void—otherwise to remain in full force to convey said mare to Emerson, Dudley & Torrey.—As witness my hand.——Signed T. J. W."

It is evident that a mortgage was contemplated by this instrument.  It is a mortgage in form and in terms.   The general property is passed, subject to a redemption.   It is a sale with condition.   Had the parties intended to make it a mortgage, as distinguished from a pledge, they could not use stronger or more explicit language.   Indeed, they could not add to it, unless they had used the negative language, that it was not to be considered a pledge.   To hold the contract a mere pledge, is inconsistent with the terms of the instrument.

The contract being a mortgage, the foundation of the action fails.   The horse having never been redeemed, the title of the defendant is absolute; and this absolute title has relation to the date of the instrument.   The general property being in the defendant

WASHINGTON, at the time of the supposed conversion, and the plaintiff having
March,
1836      only a right of redemption which is now extinct, nothing is left to
Wood      sustain the action.
vs.
Dudley.                          Judgment reversed, and cause remanded.