JOB SANDERS v. JAY WILSON v. LEONARD K SANDERS.

*Mortgage.    Rents and Profits.    Costs.*

When the mortgagee. took possession of the mortgaged premises, after breach of the condition of the mortgage, and held the same for a number of years, and the case was referred to a master to ascertain the rents and profits, who reported a great loss on the same in proportion to the value and condition of the premises, although he found the mortgagee exercised a most faithful stewardship in the management of the premises, *Held,* that although a mortgagee in possession is only bound to account for what he receives or might receive from the mortgaged premises, by the use of fair, reasonable diligence and prudence, and if the premises are rented, and rents lost by the failure of a tenant without fault of the mortgagee he is not liable to account, still when the mortgagee himself occupies, and especially when the premises is a farm under cultivation, upon which labor ·and expenditures are to be bestowed to produce annual crops and profits, the mortgagee will be charged with such sum *as will be a fair rent for the premises, without regard to what he may in fact have realized as profits from the use of them.*

Ordinarily the supreme court will not disturb the decree of the chancellor in respect to costs.

Under the circumstances of this case held the decree of the chancellor, denying the orator costs, was equitable and just.

Bill of foreclosure, ·filed at the November Term, 1857.

It appeared the orator was in possession of the premises in the years 1856,-7,-8,-9, as mortgagee after condition broken. The case was referred to a master to ascertain the rents and profits. The questions presented arose on the master's report, and the facts are sufficiently stated in the opinion of the court. Redfield, chancellor, at May Term, 1860, gave a decree of foreclosure to the orator with an allowance to the defendants of $120 per year, for rents and profits, while the premises were in possession of the orator.

The orator appealed.

*A. P. Hunton,* for the orator.

———— for the defendant.

POLAND, CH. J.    This bill was brought to foreclose a mortgage, executed by the defendant, Sanders, to the orator, on the

17th of April, 1852, of a farm in Bethel, which he purchased of the orator, to secure the payment of a note of two thousand dollars, payable in ten years from date, with interest annually.

On the 9th day of August, 1855, the defendant, Sanders, conveyed the same farm to the defendant, Wilson, who assumed the payment of the note and mortgage to the orator.

In November, 1855, there being some interest due and unpaid on the mortgage note to the orator, he brought this bill returnable to the next December term of the court of chancery.

The defendant, Wilson, answered the bill, setting up that there was an outstanding mortgage upon the same farm of one thousand dollars, by the orator in 1845, and claiming that the same should be removed before the orator was entitled to a decree, or provided for in the decree, so as to save his rights.

This outstanding mortgage was paid and extinguished by the orator in September, 1857, as is now conceded by the parties.

In the spring of 1856, the orator believing, as he says, that the defendant, Wilson, did not intend to pay and redeem his mortgage, entered into the possession of the mortgaged premises, and has since carried on the farm, and taken the rents and profits to himself, and the case now stands only upon the questions arising upon the accounting by the orator for such rents and profits.

The case was referred in due course to a master to take the account, who returned his report, stating the account for the years 1856 and 1857. The orator, before the master, professed to have kept, and produced, an accurate and minute account of all services and expenses incurred in carrying on said farm for said years, and the report states that it was made up wholly from the account thus rendered by the orator. The master reported that the farm was carried on in a prudent and judicious manner, that the charges for labor and expenditures were just and reasonable, and that the produce of the farm was sold to the best advantage, and all accounted for; in short, the report states a most faithful stewardship by the orator, and a full and honest accounting for all the avails and products. The reports of the master upon the accounts for those years, however, showed, instead of a balance of profits, the unhappy result of a net loss for 1856, of $170,83, and for 1857, of $204,55.

The cause was again referred to the same master to take the account for 1858, who reported the orator's account kept for that year, with similar favorable conclusions as to the orator's judicious and faithful management and honest accounting. The excess of loss for that year, was $127,68.

A further reference to the same master, was made for 1859, who took the orator's account in the same manner, but upon the evidence, reduced his charges somewhat, and the balance of profits for that year, amounted to the sum of $26,21.

The result of the account for the four years, showed a loss of $476,85.

In the last of these reports the master states that the premises might have been rented for the sum of one hundred and fifty dollars a year, though he is of the opinion that the rents would have diminished from year to year under the occupation of tenants by the deterioration of the farm.

When the case came before the chancellor, the results of the orator's special accounting were so entirely unaccountable and unsatisfactory, that he refused to regard the same at all, but upon what the master reports as to the annual value, and other proof on that subject, allowed the defendant the sum of one hundred and twenty dollars a year, a sum just equal to the annual interest upon the principal of the mortgage debt. The defendant, Wilson, appealed from the decree, and both parties now claim that it should be reversed, and made more favorable to them. We entirely agree with the chancellor that the orator's special accounting before the master, and his finding upon it, are wholly unsatisfactory to the judgment, as forming any basis for a just and equitable decree. The premises were a valuable farm, the years were all years of plenty in general agriculture, and no reason appears for the peculiar and extraordinary result of the orator's management of the farm.

It may be accounted for to a limited extent, by the great depression in the market for hops, as there appears to have been by the account, quite an excess of charges above receipts, on the score of the hops, and this we do not doubt is true, as the state of the market for that commodity is a matter of public notoriety. But this furnishes no sufficient reason for the great loss on the

Sanders *v.* Wilson et al.

whole farm, and for a series of years, and we are fully satisfied that there must have been a great failure either in the prudent and judicious management, and use of the premises, or in honestly keeping, and rendering the accounts before the master, and perhaps in both.

But we do not understand this to be the true rule and method of accounting for the rents and profits.

A mortgagee in possession is only bound to account for what he receives or might receive from the mortgaged premises by the use of fair, reasonable diligence and prudence, and if the premises are rented, and rents lost by the failure of a tenant, without fault of the morgagee, he is not held liable to account.

But when the mortgagee himself occupies, and especially when the premises are a farm in cultivation, upon which labor and expenditures are to be bestowed, to produce annual crops, and profits, the mortgagee will be charged with such sums as will be a fair rent for the premises, without regard to what he may, in fact, have realized, as profits, from the use of it.

The rule is founded in sound policy, for the reason that the particular items of expenditure, in labor or otherwise, as well as the profits received, are wholly within the knowledge of the mortgagee, and if he is not disposed to render a full and honest account, it would be impossible for the mortgagor to show them, or to establish errors in the mortgagee's account.

The necessity and wisdom of the rule, were never, perhaps, more fully shown than in the present case.

It appears from the several reports and accounts appended, that the orator had expended considerable sums in improvements on the farm; in removing and repairing a barn, building a shed, hog pen, and new fences, more we think, than can properly be regarded strictly as repairs.

When a mortgagee goes into possession of the premises, for breach of condition, with full knowledge of the right to redeem, and where there is nothing to show but that the mortgagor desires and intends to redeem, he has no right to expend the rents and profits for anything but such as are strictly *necessary repairs.* If he go beyond this, and make *improvements,* though they are such as are beneficial to the estate, and such as a judicious and pru-

22

dent owner would make for the benefit of it, he will not be allowed for them, for if he might thus expend the profits in improving the estate, instead of applying them to keep down the interest of the mortgage debt, it might operate to clog, if not to wholly prevent the mortgagor from redeeming, and in all transactions between mortgagor and mortgagee, equity is watchful for the interest of the mortgagor, as the weaker party and the one who deals at a disadvantage.

In the present case, however, we think the fact that the orator has made improvements beneficial to the estate, ought not wholly to be lost sight of, as enough of the rents and profits, have, by the chancellor's decree, been allowed to keep down the interest on the mortgage debt, so that has not been increased while the orator has been in possession, and if the defendant redeems, he will receive and have the benefit of whatever erections and improvements the orator has made upon the mortgaged premises. It is also to be recollected that the mortgaged premises were subject to an annual rent of $7,50, which the orator has paid, and for which, of course, he is entitled to be allowed.

Upon the whole, we are satisfied that the sum allowed by the chancellor, is as near the true rule of justice as any we could fix upon, and that it effects substantial equity between the parties.

The chancellor also disallowed cost to the orator, of which the orator complains. This court will not, except under very special circumstances, disturb a decree merely on a question of costs. But we are satisfied fully with the decree in that respect. When the bill was brought the premises were encumbered by an outstanding mortgage from the orator, and we think the defendant had a right to ask that to be removed, or provided for, before the orator had a final and general decree of foreclosure. Since that was out of the way, the orator appears to have been persistently endeavoring to avoid a proper and just accounting for his administration of the mortgage estate. These are sufficient equitable reasons for refusing him a decree for costs.

The decree of the chancellor is affirmed and remanded to be perfected.