# HENRY HEYLAND v. THOMAS W. BADGER.

CHATTEL MORTGAGE.—A chattel mortgage vests the legal title to the property mortgaged in the mortgagee, subject to be revested in the mortgagor upon the performance of the condition; and in case of breach of the condition, the title becomes absolute *at law* in the mortgagee. The title passes whether possession of the chattel mortgaged be delivered or not.

A PLEDGE.—A pledge does not vest the title in the pledgee. He has only a special property in or lien on the chattel pledged, and if the pledge is not redeemed by the time limited, it retains the character of a pledge still.

TROVER FOR PERSONAL PROPERTY MORTGAGED. — In case of a chattel mortgage the mortgagee could formerly maintain trover against the mortgagor for a refusal to deliver or a conversion of the chattel, but the mortgagor could not maintain trover against the mortgagee for refusing to deliver or selling the mortgaged property, unless the mortgage has been paid, or a tender has been made before condition broken.

TROVER DEPENDS ON TITLE.—The action of trover depends on legal title, general or special, to support it, and the mortgagor, as against the mortgagee, has no title.

BILL IN EQUITY TO REDEEM CHATTELS.—In case of a chattel mortgage the remedy of the mortgagor is by bill in equity to redeem, and his equity of redemption cannot be cut off by the mortgagee, except by a public sale of the property on due notice.

APPEAL from the District Court, Third Judicial District, Alameda County.

The defendant had judgment, and the plaintiff appealed. The other facts are stated in the opinion of the Court.

*Tully R. Wise,* for Appellant.

As the pledgee or mortgagee, whichever he was, had disposed of the property, it was useless for the borrower to tender the money in order to bring an action for the value of the property. (*Stearns* v. *Marsh,* 4 Denio, 227; *Cortelyou* v. *Lansing,* 2 Cai. Cas. 200; *Dykers* v. *Allen,* 7 Hill, 497; *Wilson* v. *Tittle,* 2 Comst. 443; *Lewis* v. *Graham,* 4 Abbot's Pr. 106.)

When the possession is tortious no demand is necessary; and when the possession is lawful and the conversion tortious, the right of action arises at once upon the tort being committed. (*Pillsbury* v. *Webb,* 33 Barb. 213; *Davidson* v. *Donati,* 2 E. D. Smith, 121; *Esmay* v. *Fanning,* 9 Barb. 176.) As to tender being necessary where a proper response to the tender is impossible, see 1 Ch. Pl. 157, Note 1, and *Dickenson* v. *Owen,* 11 Cal. 76.

It is claimed that with regard to chattel mortgages the title passed and the right of property was gone, if payment was not made at the day. This was the law in early times, but Courts of equity have for years been changing the hardships of the law. (*Smith* v. '49 *and* '56 *Quartz M. Co.,* 14 Cal. 247; *Dutton* v. *Warschauer,* 21 Cal. 609; *Willis* v. *Farley,* 24 Cal. 490; 2 Maddock's Ch. 512.)

*J. D. Hambleton,* for Respondent.

If the deposit of the hay was a simple pledge, it was the case of a debtor placing security in his creditors' hands, agreeing that the creditor may sell the same from time to time, and after paying himself all advances, costs, and charges, shall pay over to the debtor any balance resulting from such sales. A debtor certainly has power to make such an agreement with his creditor. (3 Cal. 151; Story on Bailments, Sec. 317; 6 Mass. 339; 6 Greenl. 353; 4 Barb. 493; 4 Met. 327.)

If respondent had power to sell under any circumstances, the hay was rightfully out of his hands when the demand for

it was made; and if rightfully out of his hands, the only right of the appellant is, to have an account stated of the sales, and payment to him of the excess.

Respondent's counsel also referred to the opinion of Judge McKee, the Judge who tried the case below. That portion of the opinion bearing particularly upon the law points discussed was as follows:

"The whole case, then, resolves itself into a. consideration of the legal rights and duties of mortgagor and mortgagee. The transaction is a chattel mortgage. A mortgage of personal property is a conditional transfer or conveyance of the property. If the condition is not duly performed, *i. e.*, if the debt is not paid when it becomes due, the whole title vests absolutely, at law, in the mortgagee. There is a great difference between mortgages of land and mortgages of personal property. When a debt secured by a mortgage of land is due and unpaid, it is necessary to bring a bill of foreclosure to foreclose the defendant's equity of redemption by a judicial sale of the land. But in mortgages of personal property it is not necessary to foreclose by judicial proceedings, but the mortgagee may proceed to sell the personal property upon due notice to the mortgagor. That point was settled in England by the House of Lords, in the case of *Tucker* v. *Wilson*, 1 Pere Williams, 262, and afterwards acted upon by Mr. Chancellor Hardwicke in *Lockwood* v. *Ewer*, 7 Mod. R. 279. And in *Pothonier* v. *Dawson*, Holt's N. P. R. 385, Lord Chief Justice Gibbs said: 'Undoubtedly, as a general proposition, a right of lien gives no right to sell the goods. But when goods are deposited by way of security to indemnify a party against a loan of money, it is more than a pledge. The lender's rights are more extensive than such as accrue under an ordinary lien in the way of trade. These goods were deposited to secure a loan. It may be inferred, therefore, that the contract was this: If I, the borrower, repay the money, you must redeliver the goods; but if I fail to repay it, you must use the security I have left to repay

yourself. I think, therefore, the defendant had a right to sell.'

"Such, undoubtedly, is the law on the subject in the United States. It would be otherwise where the property was only delivered by way of pledge for the payment of a debt. In that case the pledgee has no right to sell the property without calling upon the pledgor to redeem it, by giving him personal notice that if he does not do so he will proceed to sell. If he sells without such notice, the law considers him a wrongdoer, and the pledgor can recover the value of the property from him at law, without tendering the debt. But in a pledge there is only a bailment of the property as a security for the debt; in a mortgage there is not only a bailment but a conveyance, which passes the legal title to the property, and the mortgagor has the right to redeem up to the stipulated time, and defeat the title. If he tenders the debt, either when or before it becomes due, the property revests in the mortgagor, without resale or cancellation of the mortgage, or redelivery of the property, and the mortgagee is bound, at his peril, to return the property. If he refuses, the plaintiff, upon proving the tender and refusal, is entitled at law to recover the property, or its value at the time of the refusal. But if the mortgagor fails to pay or tender the debt when or before it becomes due, but allows the stipulated time to elapse, the mortgage title, defeasible before, becomes absolute at law, the property vests in the mortgagee, and may be levied on and sold for his debts. The mortgagor cannot recover the property, or its value, in an action at law; his only remedy, if any, is in chancery, to redeem. If authority is needed to demonstrate these principles, the case of *Brown* v. *Bement et al.*, 8 Johns. Ch. 96, is almost exactly in point. There the plaintiff, on the 26th of October, 1809, made and delivered to the defendants a bill of sale absolute of two horses and other property, in consideration of two hundred and ten dollars and thirty-five cents. At the same time the defendants stipulated, in writing, that on payment of the two hundred and ten dollars and thirty-

five cents fourteen days from date, they would redeliver the property. The money was not paid within the fourteen days, but on the 26th of April, 1810, plaintiff tendered the debt, and demanded of defendants the property, and they refused to deliver it. Before the tender and demand, one of the horses had been sold by the defendants. The Court say: 'The plaintiff has not shown a right of action. Here was a complete transfer of the title to the goods in question, with a defeasance on the payment of two hundred and ten dollars and thirty-five cents in fourteen days. This was a mortgage, not a technical pledge. * * * The title of the defendants here became absolute after the fourteen days, and though it does not appear whether one of the horses was sold before or after the expiration of the time to redeem, that omission is not material, as no attempt was made in season to redeem.' A judgment of nonsuit was accordingly entered.

"In the case at bar, the mortgage debt was payable 'when the hay is delivered out of the warehouse.'. The hay left the warehouse when the defendant sold and delivered it to purchasers, and shipped it to San Francisco. Therefore, at that time, if at all, a forfeiture happened. Or, if this is not such an event as constitutes a fixed and absolute time of payment, then no time of payment is specified in the note, and in that case it is a debt payable on demand. But no demand was ever made by the defendant for the payment of the debt, consequently no forfeiture took place; for where a note, payable on demand, is secured by mortgage, no forfeiture happens until demand made. Nevertheless, defendant, as mortgagee of personal property, had legal authority to sell or transfer it before or after forfeiture. Having the legal title, he can in the one case dispose of the property by sale or assignment, and the assignee will be entitled to take the property as against the mortgagor, until the mortgage debt originally contracted is paid. Whether the mortgagee, or his assignee, has or has not the property, he is bound to respond to an offer to redeem until the debt is past due. But where no

attempt is made to redeem, as in this case, an action at law cannot be maintained.

"In the other case, the debt having become due and being unpaid, the title becomes absolute in the mortgagee, and no action at law can be maintained to recover the property, even where it has been preceded by an attempt to redeem, after the time limited for the payment. The only remedy of the mortgagor is in chancery, upon a bill to redeem. That remedy exists until it is foreclosed, either by a judicial foreclosure, or a public sale with notice to the mortgagor. If it exists in favor of the plaintiff, it can only be made effectual in a Court of chancery, or at law upon an offer to redeem by an actual tender of the debt.

"It follows that the defendant must have judgment. It is so ordered."

By the Court, SAWYER, C. J.:

This is an action in the nature of an action of trover at common law, to recover the value of a quantity of hay claimed to have been wrongfully converted by defendant. Plaintiff, in July, 1863, stored some sixty-two tons of hay in defendant's warehouse, and from time to time, while the hay was thus stored, obtained money from the defendant to the amount of six hundred dollars, for which he gave his obligation in writing, payable in coin, with two per cent per month interest, when the hay should be delivered out of the warehouse. Subsequently, in September, plaintiff obtained two hundred dollars more from defendant, and executed to him a bill of sale of the hay, absolute on its face. During the months of January, February, and March following, defendant sold the hay at about twenty dollars per ton—the value of the hay at the time. Sometime in March or April, after all the hay except about two tons had been sold, plaintiff demanded the hay of defendant, but did not tender the

amount due for the money before obtained.  The value of
hay had at that time risen to from forty to forty-five dollars
per ton.  Plaintiff claimed that the bill of sale was executed
as a security for the money borrowed, while defendant
claimed that the transaction was an absolute sale.  The
Court found the conveyance to be a security for money, and
that the transaction was strictly a chattel mortgage, as dis-
tinguished from a pledge, and as a conclusion of law, that
plaintiff cannot recover the value of the hay in the action
adopted.

There is a well settled distinction in the law between a
pledge and a chattel mortgage, and as to this distinction
there does not appear to be any conflict in the authorities.
In the case of a pledge the title remains in the pledgor, but
in the case of a chattel mortgage, whether possession of the
chattel be delivered to the mortgagee, or not, the title passes
to the mortgagee, subject to be defeated upon performance
of the condition ; and in case of a breach it becomes absolute
*at law* in the mortgagee.

The title being in the mortgagee, he is entitled to the
immediate possession, even as against the mortgagor, unless
the parties otherwise stipulate.  The rule is well stated and
numerous authorities cited in *Tannahill* v. *Tuttle*, 3 Mich.
110.  In *Wood* v. *Dudley*, 8 Verm. 435, the difference between
a mortgage and pledge is thus stated : " The distinction
between a mortgage and pledge is important, as the effects
of each are widely different.  In a mortgage of a personal
chattel the general property passes to the mortgagee, subject
to be redeemed according to the terms of the contract; if
not redeemed within the time limited, the property becomes
absolute in the mortgagee.  The consequence is that the
mortgagee may sell or otherwise dispose of the chattel imme-
diately.  But in case of a pledge the general property does
not pass, but remains in the pawnor—the pawnee having
only a special property or lien; and in this case, although
the pledge may not be redeemed by the time limited, yet it
retains the character of a pledge still." (See, also, *Fuller* v.

*Acker*, 1 Hill, 475; *Langdon* v. *Buel*, 9 Wend. 83; *Smith* v. *Acker*, 23 Wend. 668; 2 Hill on Mort., Chaps. 51–53, p. 478, *et seq.*; Story on Bail., Sec. 287; *Cortelyou* v. *Lansing*, 2 Cai. Cas. 200; *Homes* v. *Crane*, 2 Pick. 210; *Wilson* v. *Brannan*, 27 Cal. 269.)

The consequence of the distinction is important. The mortgagee could, upon his title, maintain trover against the mortgagor who should refuse to deliver up the property mortgaged, or who should assume to sell the entire property in it, or in any manner convert it, or against the party who should assume to purhcase the entire property from the mortgagor. (*White* v. *Phelps*, 12 N. H. 385.) But the mortgagor could not maintain trover against the mortgagee for refusing to deliver the property, or for selling it, because the mortgagee *at law* has the title, and there can be no conversion by the party having the title. The action of trover depended on title, general or special, to support it, and the mortgagor, as against the mortgagee, has no title. This was so expressly held in *Burdick* v. *McVanner*, 2 Denio, 171, in which the mortgagor, after the law day had passed, tendered the amount due and demanded the mortgaged property, which the defendant refused to deliver. He then sued in trover for the conversion. The Court held that the action could not be maintained and said: "At law he had no title whatever against the defendant, and could only redeem in equity a right which, in this case, owing to the small value of the property could not be enforced in chancery. But this circumstance cannot change the construction of the mortgage, nor give to the plaintiff a right or a remedy which he would not have if the property was of greater value." (*Id.* 172.) The case of *Holmes* v. *Bell*, 3 Cush. 823, is also a strong case to the same effect. The mortgage was ostensibly to secure a note payable in sixty days, but the evidence showed that the transaction was to secure the mortgagee against a liability as a receiptor for property of plaintiff taken in an attachment suit.

After the note fell due, the mortgagee sold the property,

but the matter was subsequently settled and the mortgagee discharged from all liability, after which the mortgagor made a written demand of the mortgaged property upon the mortgagees, who replied that they had not got it and should do nothing about it, whereupon trover was brought for a conversion. The Court say: "It appears very clear that this action, in its present form, cannot be maintained. To maintain trover the plaintiff must have a legal title to the property alleged to have been converted. It is not sufficient to show an equitable title, or that the defendant had converted property which he was bound to convey to the plaintiff." It is then held that although trover might be maintained under similar circumstances in the case of a pledge it could not in the case of a mortgage. (3 Cush. 323.) *Brown* v. *Bement,* 8 Johns. 96, is to the same effect, and is, in all essential particulars, like the present case, for it is there held that it makes no difference whether the sale is made before or after default if no attempt to redeem is, in fact, made before default. The language of the Court is: "The title of the defendants has become absolute after fourteen days, and though it does not appear whether one of the horses was sold before or after the expiration of the time to redeem, that omission is not material, as no attempt was made in season to redeem." (Ib. 98.) So in the present case, if the money secured became due when the hay was delivered out of the warehouse by defendant there was a default, and the title *at law* became absolute; but if not, there had been at the commencement of the suit no tender of the money and no attempt to redeem. The legal title was in the mortgagee and could only be divested by a tender of the money in time. Until divested the mortgagor had only an equity. He has brought his action, however, as upon a conversion for the value of the property claimed to be converted. And the facts averred will sustain no other action. They are insufficient to constitute a cause of action for account and redemption.

The authorities cited by appellant relate to pledges, in the

technical sense of the term, and do not apply to mortgages. It is claimed, however, that in modern law, there is no distinction between pledges and chattel mortgages, and particularly so in this State. But no authority is cited to sustain this view, and we find nothing tending to show that the distinction is anywhere, in the slightest degree, abrogated or modified. There has been some modification of the legal aspect of the rights of the parties in this, and in some other States with reference to mortgages on real estate, assimilating the legal right to the former equitable doctrine. But this modification depends on the provisions of section two hundred sixty of the Practice Act. This is conceded in the cases establishing the present rule in this State on the subject. Mr. Chief Justice Field, in *Dutton* v. *Warschauer*, 21 Cal. 623, says: "It was from a consideration of the character of the instrument, as settled by these decisions and the modern cases generally, that we were induced to adopt the equitable doctrine as the true doctrine; *and it was from a consideration of the provisions of the statute which led us to go beyond those cases and carry the doctrine to its legitimate and logical results, and regard a mortgage as a security under all circumstances, both at law and in equity.* * * * Mortgages, *since the statute*, are regarded at all times as mere securities, creating only a lien or incumbrance, and not passing any estate in the premises." So, in *Fogarty* v. *Sawyer*, 17 Cal. 592, after quoting section two hundred sixty of the Practice Act, Mr. Chief Justice Field says: "This section, as we observed in *McMillan* v. *Richards*, 9 Cal. 409, takes from the mortgage its common law character and restricts it to the purposes of security. At common law, a mortgage was regarded as a conditional estate, which became absolute upon breach of its condition. It gave the mortgagee, upon its execution, except as otherwise provided by stipulations inserted in the instrument, a right of immediate possession. Upon it he could peaceably enter, or support ejectment. *The section in question changes the character of the instrument.*" In New York, also, even after the mortgagor was considered in equity, and even at law, for most

purposes as the owner of the land, the legal title was still held to be in the mortgagee, so as to enable him to maintain ejectment, until the rule was changed by statutory provisions. (*Warings* v. *Smyth*, 2 Barb. Ch. 135; *Kortright* v. *Cady*, 21 N. Y. 365.) And this is believed to have been the case in other States. The present doctrine prevailing in this State was not established, either here or elsewhere, without the aid of statutory provisions. But our statute has reference only to "real property." (Prac. Act, Sec. 260.)

We know of no legislation affecting the character of the rights acquired under pledges and chattel mortgages. The common law, as a body, was expressly adopted by the Legislature as the rule of decision in this State, and the character of the rights acquired under pledges and chattel mortgages under the common law is well settled. We know of nothing in the decisions of England, or of the other States modifying it. Nothing in the decisions of our predecessors, or of the present Court has been brought to our attention recognizing any modification of the common law on the subject in question. On the contrary, the distinction between a pledge and chattel mortgage has been fully recognized as existing in this State, and the case of *Brown* v. *Bement*, 8 Johns. 96, before cited, referred to as authority. (*Dewey* v. *Bowman*, 8 Cal. 150.) A modification of the law now so well established, by the Courts, in the face of the statute adopting the common law would be judicial legislation, repealing the statute to the extent of such modification. The remedy of the mortgagor is by an equitable action to redeem. This was the view taken by the District Court.

The judgment and order denying a new trial are affirmed.

CROCKETT, J., concurring specially:

I concur in the judgment.

Mr. Justice SANDERSON expressed no opinion.

By the Court, SAWYER, C. J., on petition for rehearing :

We do not find anything in the petition for rehearing that was not substantially presented in appellant's briefs on the former hearing.    Appellant evidently misapprehends our opinion.    We did not express our views as to whether there was a default on the part of Heyland, but held that appellant could not recover in the action brought, whether there was, or was not, a default.    We have held nothing in conflict with the authorities cited by him.    Some of them were cited by us.    The case in 8 Denio, 33, (*Charter* v. *Stevens,*) was where the specific articles involved in the suit were sold after enough had already been sold to pay off the mortgage, and the mortgage was, therefore, satisfied, and the remainder of the property thereby revested in the mortgagor.    The mortgagee was not satisfied to keep the property under his mortgage title, but he went on to collect the money, and when he had collected enough to satisfy the mortgage, the mortgage itself was satisfied, and the decision is put upon that ground.    It was held that this was equivalent to absolute payment, and that the mortgagee's title to the chattels remaining unsold was extinguished.    The case is against petitioner, and indicates the true remedy.    The case of *Kater* v. *Steinruck's Administrator*, 40 Pa. 501, turned upon peculiar statutory provisions.

We only consider the title *at law*.    We admitted an equity of redemption, and held only that appellant's remedy was in equity to redeem.    There is no doubt, that to cut off this equity of redemption, a sale must be made on due notice.    Had the sale been regular upon due notice given, all rights, both legal and equitable, would have been cut off.    The complaint in this case presents the case only in a legal aspect, and in that aspect only did we determine it.    The action purports to be an action to recover damages for the wrongful sale of the hay, and it was evidently tried on that theory.    There was no tender of the amount due, no account, or redemption sought.    It does not purport to be, and was not

tried on the theory that it was an equitable suit for a redemption. The case of *Wilkins' Executors* v. *Sears*, 4 Mon. 344, cited by appellant, was an action in equity to redeem, and it recognizes no other, without first tendering the amount due.

Rehearing denied.

Neither Mr. Justice RHODES nor Mr. Justice SANDERSON expressed an opinion.