# F. C. WHITING v. C. A. ADAMS.

## January Term, 1894.

*Land Contract. Title of vendor to crops reserved. No right to sell at auction after foreclosing contract. Must not cut timber if security ample. Damages.*

1.  Where one goes into possession of land under contract of purchase, which is conditioned that the title to the crops shall remain in the vendor until the terms of the contract are complied with, the vendor does not thereby acquire the rights of a chattel mortgagee in such crops, and cannot sell them under the provisions of the chattel mortgage law in case of default.

2.  Such a transaction amounts in effect to a common law mortgage of the crops; whether good against attaching creditors of the vendee is not decided.

3..  The vendor cannot proceed by bill of foreclosure against the land, and, after beginning this proceeding, sell at auction the crops, and if he does so will be liable as for the conversion of the crops.

4.  The value of the crops so converted being more than sufficient to pay what was due upon the contract at the time of their conversion, and the premises ample security for the balance of the debt, the vendor has no right to cut off growing timber, although he may have had the legal right to enter into possession when he did.

5.  If he does so, and his operations in reference to the premises are such that he is manifestly proceeding in wilful violation of the rights of the vendee, he should be charged, not with what the timber is worth on the stump, but with what he receives for it after manufacturing it into lumber and taking it to market.

6.  *Held*, that the facts reported require the application of this rule.

Bill of foreclosure. Heard upon the report of a master at the April term, 1893. Rowell, chancellor, decreed that

the master's report be accepted and confirmed; that the orator account to the defendant for the gross value of the timber, being eight hundred sixteen dollars and twenty cents; for loss occasioned by cutting stumps too high, twelve dollars; for personal property sold at auction, one hundred sixty-two dollars and fifty cents, and for rent of premises to date, twenty-one dollars and thirty-three cents, making in all the sum of one thousand twelve dollars and three cents; that there was due the orator on said mortgage the sum of six hundred ninety dollars and thirty cents, and that enough of said one thousand twelve dollars and three cents be applied thereon to pay and extinguish the same, leaving nothing due on the mortgage; that the defendant may have leave to file a cross-bill for the recovery of the surplus; that if no cross-bill is filed the original bill be dismissed, and that in any event "in view of the unnecessary and offensive conduct of the orator" the defendant recover his costs. The orator appeals.

The title of the defendant was under a land contract, but it was conceded upon the trial before the master that the rights of the parties were those of mortgagor and mortgagee.

The defendant had resided continuously upon the premises in question for more than forty years. One Ober formerly held a mortgage upon the same, which he foreclosed at the April term, 1888, the defendant obtaining the usual year for redemption. This decree was for the sum of one thousand six hundred thirty-one dollars and ninety-eight cents, and became absolute April 30, 1889. The defendant continued in the possession of the premises after the expiration of the day of redemption.

May 6, 1889, Ober sold the premises to one Jackson, and conveyed them by warranty deed of that date. Jackson paid Ober for the same one thousand one hundred fifty dollars, and on the following day, May 7, sold the prem-

ises to the defendant for one thousand one hundred eighty dollars. Nothing was paid at the time of the sale to the defendant, but the contract of purchase recited that three hundred dollars was to be paid May 1, 1890, and two hundred dollars on May 1 of each year following until the principal with annual interest was fully paid. It was furthermore provided that the defendant should not cut or carry off any timber growing upon said premises without accounting to Jackson for its value; and that all the crops raised upon said premises should be and remain the property of Jackson until the payment for the year was fully made.

Under this agreement the defendant made the first payment of three hundred dollars, and the second payment of two hundred dollars, and a payment upon the second two hundred dollars which fell due May 1, 1892. The master reported that on November 1, 1892, there was due from the defendant under said land contract the sum of one hundred fifty-nine dollars and eighty-seven cents. The last payment by the defendant was made July 7, 1892.

August 18, 1892, Jackson conveyed the premises to the orator by warranty deed, containing a condition that the orator should carry out the terms of said contract with the defendant. November 1, 1892, the orator brought this petition, praying that the equity of redemption of the defendant in the premises might be foreclosed, and the petition was served on the defendant November 24, 1892.

November 28 following, the orator went to the premises, and finding the defendant absent therefrom took possession, and put out nearly all the furniture and household goods belonging to the defendant, leaving them in the door-yard. He at that time put one Wescom into possession as his tenant.

At the time of taking possession the orator also took possession of a quantity of hay in the barn and a quantity of

corn, being a part of the crops grown on the place that year. Subsequently he caused this property to be sold by a deputy sheriff in the same manner as though it were mortgaged to him by chattel mortgage. This sale was on the ninth day of January, 1893, and the entire amount received for the property was thirty-eight dollars and ten cents. The defendant claimed that this sale was irregular and void and that the orator should account to him, not for the amount actually received, but for the value of the property. The master found that the actual value of the property November 28, 1892, was one hundred sixty-two dollars and fifty cents.

Soon after the orator went into possession of the premises he began cutting off the timber growing upon the same, and proceeded to cut off and draw to the village of Hyde Park what timber was growing upon the premises. The master found that the value of this timber upon the stump was four hundred seven dollars and thirty-seven cents.

He further found that the expense of cutting and drawing the timber to Hyde Park was four hundred eight dollars and eighty-three cents, so that the entire value of the timber at Hyde Park, in the log, was eight hundred sixteen dollars and twenty cents. It appeared that the orator intended to manufacture this timber into lumber himself, but whether he had or had not done so at the date of the hearing did not clearly appear. Neither did it clearly appear what of the timber was cut before and what after the sale of the personal property on January 9, 1893.

At the time the orator took possession of the premises he found the house locked, and made an entry without breaking the lock. He put the goods of the defendant out of doors, and left them there until they were removed some days afterwards by the defendant. He also turned the live stock of the defendant out of the barn. The defendant was absent for but a single day, and when he returned the orator

refused him admission to the premises, and when he continued to remain in that vicinity, caused his arrest some two or three days afterwards. The tenant who was put into possession by the orator was unfriendly to the defendant, refused to allow him to enter into the house, except for a short period upon one occasion, and as often as he put his stock into the barn turned it out, until the defendant finally drove it away.

The master found that in cutting the timber upon the premises the orator cut the trees higher than was usual or necessary, and that the defendant was thereby damaged to the amount of twelve dollars. He also found that the fair rental value of the premises up to May 7, 1893, was twenty-one dollars and thirty-three cents.

*P. K. Gleed* and *B. A. Hunt* for the orator.

The orator had a common law mortgage upon the crops, which might be foreclosed in the manner in which the orator attempted to foreclose this mortgage; that is, by a sale of the crops upon due notice to the defendant. *Taggard* v. *Packard*, 39 Vt. 628; *Calkins* v. *Clement*, 54 Vt. 635; *White River Bank* v. *Downer*, 29 Vt. 332.

The orator should be charged only with the actual value of the timber to him; that is, if he is charged with its gross value, he should be allowed the expense of getting it out. 2 Dan. Cha., p. 1237–8; 2 Jones' Mort., ss. 1123, 1125, 1127, 1115.

*E. B. Sawyer* and *R. W. Hurlburd* for the defendant.

Having elected to proceed by foreclosure of his mortgage, the defendant could not also sell the personal property at auction. *Howard* v. *Witters*, 60 Vt. 578; 8 Am. & Eng. Ency. of Law, 185; *Hubbell* v. *Wheeler*, 2 Aik. 359;

*Stone* v. *Knapp*, 29 Vt. 501; *Stoughton* v. *Mott*, 25 Vt. 668.

The orator was a wrong-doer in the cutting of the timber, and should account for its gross value. *Wright* v. *Parker*, 2 Aik. 212; *Hunt* v. *Tyler*, 2 Aik. 233; *Hooper* v. *Wilson*, 12 Vt. 695; *Walker* v. *King*, 44 Vt. 601; 10 Am. & Eng. Ency. of Law, 4; *Hubbell* v. *Wheeler*, 2 Aik. 359; *Stoughton* v. *Mott*, 25 Vt. 669; *Hyde* v. *Cooper*, 26 Vt. 556; *Stone* v. *Knapp*, 29 Vt. 502; Wood's Landlord and Tenant, s. 447; *Sanders* v. *Wilson*, 34 Vt. 318; *Boston Iron Co.* v. *King*, 2 Cush. 400; *Kellogg* v. *Rockwell*, 19 Conn. 446; *Miller* v. *Lincoln*, 6 Gray 556; *Richardson* v. *Wallis*, 5 Allen 78; *Montague* v. *Boston, Etc., Rd. Co.*, 124 Mass. 242.

ROSS, C. J.   This is a petition to foreclose, in legal effect, a mortgage. The parties agree that they stand, in regard to the premises, in the relation of mortgagor and mortgagee. This admits that the defendant has an equity in all the property embraced in the contract sought to be foreclosed. The orator cannot rely upon any other rights than those of mortgagor, however absolute his paper title to the property. *Davis* v. *Hemenway*, 27 Vt. 589. The defendant had been in possession of the premises many years. He gave a mortgage on them which was foreclosed and became absolute April 30, 1889. H. A. Jackson bought out the orator in the foreclosure proceedings, and, on the same day, bargained them to the defendant, upon his agreeing to pay one thousand one hundred and eighty dollars therefor. This sum was to be paid on time, extending over several years. It is apparent that Jackson held the title to the premises as security for the payment of that sum. The defendant had remained in possession. By the contract he was still to remain in possession, carry on the premises without suffering or committing waste, and if he cut any lumber, pay Jackson

an agreed stumpage. Jackson also thereby retained a lien on all crops grown each year, until the payment for that year was fully made.

The defendant paid to Jackson five hundred fifty dollars before November, 1892. He was then behind in the payment of that year one hundred fifty dollars and some interest. The orator purchased Jackson's interest in the premises, and took a deed thereof agreeing to carry out Jackson's contract with the defendant. This was August 18, 1892. November 1, 1892, he brought this petition, which was served on the defendant November 24, 1892. Soon after, the orator went to the premises, and found the house locked and the defendant temporarily absent. He effected an entrance, removed all of the defendant's things, including his live stock, put in a tenant, forbade the defendant to enter, and caused his arrest for entering. He took possession of the crops grown that year, which at a fair valuation were worth more than enough to pay all that was then due under the contract. The premises were ample security for all that was to become due under the contract. There was a timber lot on the premises. The orator soon entered upon that and stripped it of everything that was valuable. Waiting thirty days after taking possession, the orator placed the land contract in the hands of a deputy sheriff who proceeded to sell the crops grown on the premises under the provisions of the statute for the foreclosure of a chattel mortgage.

The first question arising is whether this sale was authorized by law. The land contract in which the lien was reserved was not a chattel mortgage. It was not executed as required for a valid chattel mortgage. R. L., 1966, 1967. If in other respects duly executed—which we do not consider, nor determine—it was not sworn to by the parties to it. The method of foreclosure pursued by the orator was a part of the act authorizing chattel mortgages and applicable only to such mortgages as are executed in accordance with

its provisions. *Longey* v. *Leach*, 57 Vt. 377 ; *Howard* v. *Witters*, 60 Vt. 578 ; *Stafford* v. *Adair*, 57 Vt. 63 ; *Calkins* v. *Clement*, 54 Vt. 635.

Although the land contract does not run to Jackson and his assigns, yet the title to the premises was vested in him. Hence the title to the emblements, or annual crops grown thereon vested in him, except so far as they were released by the contract. By that, the title to the yearly grown crops between the parties to that contract was held by Jackson as security until the payment of that year was made. *Paris* v. *Vail*, 18 Vt. 277 ; *Smith* v. *Atkins*, Ib. 461 ; *Briggs* v. *Oaks*, 26 Vt. 138 ; *Briggs* v. *Bennett*, Ib. 146 ; *Gray* v. *Stevens*, 28 Vt. 1 ; *Esdon* v. *Colburn*, Ib. 631 ; *Leland* v. *Sprague*, Ib. 746 ; *Baxter* v. *Bush*, 29 Vt. 465 ; *Bellows* v. *Wells*, 36 Vt. 599 ; *Cooper* v. *Cole*, 38 Vt. 191.

But the defendant, in legal effect, being a mortgagor in possession, the crops grown by him might possibly have been held if attached by his creditors. *Cooper* v. *Cole*, 38 Vt. 185. The land contract between the parties was a common law mortgage of the yearly grown crops to secure the payment agreed to be made that year. *Atwater* v. *Mower*, 10 Vt. 75 : *Coty* v. *Barnes*, 20 Vt. 78 ; *Wood* v. *Dudley*, 8 Vt. 430 ; *Taggart* v. *Packard*, 39 Vt. 628 ; *Blodgett* v. *Blodgett*, 48 Vt. 32.

Such mortgage can be foreclosed, or a bill brought to redeem the property, in the ordinary method of foreclosing mortgages. *Blodgett* v. *Blodgett*, *supra*. The orator, not at law, but in equity, succeeded to the rights of Jackson under the contract. He can maintain the bill, as originally brought, to foreclose the defendant's rights not only in the land named in the contract, but also in the crops grown in the year 1892. The crops are the growth of the land, and held by the contract for payment of a part of the same debt for which the land is held. They are both held for the payment of the same claim. He cannot, in equity, be allowed

to separate their foreclosure, thereby increasing the cost, and proceed against the land for the payment of the debt by this bill, and at the same time take an independent proceeding, under the chattel mortgage law, to obtain payment also from the crops. Proceedings prescribed by the chattel mortgage law are adapted and intended for mortgages executed under the provisions of that law. *Calkins* v. *Clement*, 54 Vt. 635.

He did not attempt to sell the crops under a common law mortgage. *Taggart* v. *Packard*, 39 Vt. 628. By attempting to sell the crops in a method unauthorized he converted them to his own use, and must account for them at their fair market value. The defendant's right to redeem equitably vested in the land and crops, taken as one security for the payment of that portion of the debt which was then over due. He was under a duty to exercise this right with reference to both, and not with reference to the crops, separate from the land. Soon after bringing his bill, and therein acknowledging the equitable right of the defendant to redeem both the land and crops, the orator took possession, for condition broken, in a manner calculated, if not intended, to deprive the defendant of his right of redemption. He not only removed the defendant's household goods, but turned out his live stock, sold the hay in a manner unauthorized, and began at once to cut and remove all the timber suitable to be manufactured into lumber. A mortgagee, in possession, is under a duty to use the premises and property like an ordinary prudent owner. He is bound to make necessary repairs. He cannot improve the owner out of his equity, nor can he unnecessarily, when the security is ample, encroach upon the body of the property pledged.

He is bound to derive a reasonable income from the use of the property and apply it, first, to keeping the interest extinguished, and the surplus to the extinguishment of the principal. He can legally no more commit waste than can

the mortgagor.   He is chargeable for loss, incurred by his wilful default.   He is not entitled to receive anything for his own personal services.   Pom. Eq. Jur., ss. 1215, 1216, 1217 and notes; *Barrett* v. *Nelson*, 54 Iowa 41, 37 Am. R. 183; *Sanders* v. *Wilson*, 34 Vt. 318; *French* v. *Bowen*, 2 Aik. 120; *Moore* v. *Cable*, 1 Johns. Ch. 385, 1 N. Y. Ch. (L. Ed.) 381 and note; *Benedict* v. *Gilman*, 4 Paige 58, 3 N. Y. Ch. 55 and note; *Currier* v. *Webster*, 45 N. H. 226; 2 Jones, Mortg., ss. 1123, 1125.   S. 1123 says he must account for waste committed by him while in possession.   In s. 1125 it is said,

" If the property is otherwise sufficient, the mortgagee has no right to open and work mines; and, if he does so, will be charged with the gross receipts without any allowance for the expense of working."

Under the principle, that he who seeks equity must do equity, every case is largely controlled by its own facts. From the facts reported, from the manner in which the orator took possession, in which he sold the personal property, and in which he stripped the premises of all the valuable lumber, when his security was ample, it is apparent that he purposely and intentionally disregarded the rights of the defendant, and intended to place him and the property in such condition that he could not raise, on the property, the money required to redeem it.   He thereby placed himself in the light of a wilful trespasser.   In such cases at law the jury may award exemplary or punitive damages.   To allow him to take the property in such cases at its market value would allow him to compel its sale at that value, however much to the inconvenience and against the will of the owner.   The decisions on the subject of the rule of damages in such cases have not been in full accord, and it would be difficult to reconcile them.   Many times, evidently, the decision has been controlled by the form of action.   *Foote* v. *Merrill*, 54 N. H. 490.   For a full discussion of the question and re-

view of the authorities, see *Barker* v. *Wheeler*, 24 Am. Dec. 66 (8 Wen. 505) and note; *Batchelder* v. *Kelley*, 34 Am. Dec. 174 (10 N. H. 436) and note; *Curtis* v. *Groat*, 5 Am. Dec. 204 (6 John. 168) and note; *Coal Creek M. & M. Co.* v. *Moses*, 54 Am. Rep. 415 (15 Lea. 500) and note; *Blain Avon Coal Co.* v. *McCulloh*, 43 Am. Rep. 560 (59 Md. 403) and note.

In the *E. E. Bolles Wooden Ware Co.* v. *United States*, 106 U. S. 432, this question was considered. Judge Miller, who delivered the opinion of the court, commends the research of the plaintiff's counsel in placing before the court all the authorities, English and American. The English cases relate largely to mining coal. He quotes from the opinion of Lord Hartley, in the House of Lords, in *Livingston* v. *Rawyards Coal Co.*, L. R. 5 App. Cas. 33, as a statement of the English doctrine, as follows:

" There is no doubt that if a man furtively and in bad faith robs his neighbor of his property, and because it is under ground is probably for some little time not detected, the court of equity in this country will struggle, or, I would rather say, will assert its authority to punish fraud by fixing the person with the value of the whole of the property he has so furtively taken, and making him no allowance in respect of what he has so done as would have been justly made to him if the parties had been working by agreement."

But,

" When once we arrive at the fact that an inadvertence has been the cause of the misfortune, then the simple course is to make every just allowance for outlay on the part of the person who has so acquired the property, and to give back to the owner, so far as is possible under the circumstances of the case, the full value of that which cannot be restored to him *in specie*."

Judge Miller then says:

" There seems to us no doubt that in the case of a wilful trespass the rule as stated above is the law of damages, both in England and in this country, though in some of the state courts the milder rule has been applied even to this class of

44

cases.　*　*　*　On the other hand the weight of authority in this country as well as in England, favors the doctrine that, where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern, or if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition.　*Winchester* v. *Craig*, 33 Mich. 205, contains a full examination of the authorities on the point."

In that case, which was trover, for timber worth when felled, sixty dollars and seventy-one cents, but when sold by the wrong doer, worth eight hundred and fifty dollars, the court applied the harsher rule to a *bona fide* purchaser from the tort feasor, holding that such purchaser took only the rights of his vendor. We think this case states the result of the authorities here and/in England on this point. In the case at bar, this court is not trammeled by the form of the action. The only question is, in what sum shall the orator account for the lumber which he wrongfully stripped from the premises, when there was, if the personal property should be applied, nothing due on his equitable mortgage? When he took possession the condition of the mortgage was broken. This gave the orator the right to take peaceable possession of the premises and the crops grown that year. His entry was not wrongful. But when he converted the personal property, on which he had a lien, he was in equity paid in full for all there was due him on the equitable mortgage. The orator's counsel contends that the balance of the value of the personal property, above the amount due on the payment for the year 1892, was not sufficient to pay the costs of bringing the bill of foreclosure. But this is not certified to be the truth. There is no statement of the costs of bringing the bill. The court of chancery denied the orator any costs on account of his "unnecessary and offensive conduct." Hence, while the orator's entry may have been lawful, so that he would not be guilty

of a forcible entry, he was on the facts found, guilty of wrong-
fully wasting the premises, after he had, by conversion of
the personal property, received enough to pay in full what
was then due on his mortgage.   It is true that equity never
enforces forfeitures, nor inflicts penalties nor punitive dam-
ages.   But the question is not one of enforcing penalties
nor of inflicting forfeitures, or punitive damages.   The
defendant's rights in the lumber continued while the orator
was cutting and removing it to the place where he disposed
of it.

The question is whether the orator, under the circum-
stances, shall be allowed to deduct from what the value of
the lumber was at the place of disposal, what he had expend-
ed in cutting and removing it there?   It is contended that
the orator supposed he had the right to cut and remove the
lumber.   He was under no mistake as to the facts, and is
presumed to know the law applicable thereto.   He must,
therefore, be held to have wilfully as well as wrongfully,
cut and removed the timber.   All his acts in so doing were
done against the known will and protest of the defendant.
As we have heretofore found, in equity the orator could
charge nothing for his services in properly caring for the
property while he was in possession.   Much more, he should
not be allowed for them in wrongfully stripping the premises
of what would be most valuable and useful in aiding the
defendant to raise on them the money required to redeem
them.

On the facts found, we do not think that the orator is en-
titled to an allowance for his expenditure in wrongfully cut-
ting and removing all the standing lumber from the prem-
ises; thus leaving the sugar orchard unprotected from
violent winds, which may greatly damage it, although at
the time of the hearing, no special damage had arisen from
this cause.   If the orator's acts could be fairly and reasona-
bly justified, because consented to by the defendant, or be-

cause the security was insufficient and must be immediately utilized to save the orator from loss, he should account for the lumber cut at its stumpage value. *Sanders* v. *Wilson et al.*, 34 Vt. 318.

But neither the court of chancery nor this court can justify his acts. These views affirm the decree of the court of chancery. If the defendant should desire to move for leave to file a cross-bill, he can do so in the court of chancery.

*Decree affirmed and cause remanded.*

Start, J., dissents.