## BARNETT v. NELSON ET UX.

1. **Mortgage**: MORTGAGEE IN POSSESSION: RENTS AND PROFITS. A mortgagee in possession of mortgaged property, which he devotes to his own use, will be held to account to the mortgagor for its reasonable rental value, without regard to the amount he actually realizes therefrom.

2. ——: ——: ——. Where a mortgagee entered into possession under the erroneous supposition that he had acquired the ownership of the property, it was held that he was not accountable as a trespasser, but only for its fair rental value while so in his possession.

3. ——: ——: REPAIRS. It is the duty of one so in possession to keep the property in proper and ordinary repair, and he is liable for all damages caused by a failure to do so, without regard to the good faith with which he acted.

4. ——: RECEIVER PENDING FORECLOSURE. Facts considered under which it was held that the appointment of a receiver to take charge of mortgaged property pending foreclosure of the mortgage was unauthorized.

*Appeal from Adams District Court.*

MONDAY, JUNE 14.

This case was before us on a former appeal. See 46 Iowa, 495, to which reference is made for a statement, in part, of the facts. Upon that appeal it was held that the plaintiff should be regarded simply as a mortgagee in possession, and liable to account, and the cause was remanded for the taking of an account and the foreclosure of the mortgage originally sued upon, if anything should appear to be due thereon. Upon the return of the cause to the court below the plaintiff filed an amendment to his petition, setting up the note to J. R. Lewis, and praying a foreclosure of the mortgage executed to secure the same; also asking that the money advanced on the Cass County Bank judgment be taken into consideration in the accounting; also claiming the sum of $1,734.24 for insurance, taxes and necessary repairs upon the property whilst the plaintiff was in possession.

The cause was referred to A. Beason, Esq., who submitted the following report:

1.   That Plaintiff paid on the Cass County Bank foreclosure sale the sum of $1,624.27, on the 22nd day of May, 1873.

2.   That plaintiff took possession of the mill on the 1st day of May, 1874.

3.   That there was due plaintiff on the 1st day of May, 1874, on the two notes set out in the petition and amendment thereto the sum of $3,297.33, and on the 16th day of April, 1878, the day of trial, the amount of said notes was $5,-210.08.

4.   That each of said notes and mortgages provides for a reasonable attorney fee if foreclosed by suit, and by the agreement of the parties $132.44 is a reasonable fee on the first amount and $180.25 on the second.

5.   That the rental value of the mill during the time plaintiff held possession, from May 1, 1874, to April 16, 1878, was $1,200 per year.

6.   That plaintiff paid during the time he had possession of the mill taxes thereon to the amount of $232.24, and insurance to the amount of $118.80.

7.   That plaintiff received from the mill and coal banks and house rent while in possession thereof, including what Jas. Shafer paid him, $2,942.97, and expended in repairs thereon, exclusive of taxes and insurance, the sum of $1,-242.62.

8.   That plaintiff has received from the sale of lots on the mortgaged property the sum of $60.00.

9.   That the defendant has received credit on his notes for the hogs, cattle and flour he let plaintiff have.

10.   That plaintiff never received anything for the blacksmith tools but a note, which he tendered to defendants.

11.   That plaintiff procured the insurance on the mill for his own benefit and without the assent of defendant.

12.   That defendant's homestead consists of lots 5 and 6 in

Barnett v. Nelson.

block 9, in the town of Carbon, and is included in the two mortgages set out in plaintiff's petition.

13. That plaintiff, after taking possession of the mill and other land, under the Cass County Bank foreclosure sale, claimed to be the absolute owner thereof, and treated it as his own, and demanded of defendant the possession of his homestead, but never attempted to eject him therefrom, or in any way disturb his possession.

14. That defendant's claim for water rent for the use of the saw mill is not sustained by the evidence.

15. That on the 24th day of September, 1877, defendant gave plaintiff notice to surrender the possession of the property to him, but did not pay or offer to pay off plaintiff's liens thereon.

16. That the defendant Rebecca Nelson, wife of Thomas Nelson, did not join in the Cass County Bank mortgage, and she was not a party to the foreclosure suit.

17. The mill has been suffered to run down since April, 1874, for the want of proper care and necessary repairs, and is now in bad condition, and I find the damage to mill for want of ordinary care and repairs to be $1,000; and I further find in this connection that Barnett treated the mill as his own property and was not guilty of any fraud or gross carelessness in the management thereof.

18. That at the time of the execution of the Cass County Bank mortgage defendant Thomas Nelson was the head of a family and had a wife living with him, and occupied as his homestead the whole of the forty acre tract in controversy, except the northwest ten acres, upon which the mill was situated.

19. That said land was laid off into the town of Carbon in March, 1873, and the plat thereof approved and ordered to be recorded by the judge of the District Court on the 9th day of April, 1873.

20. That the $2,000 mortgage set out in plaintiff's petition covers only half of the forty acres; to-wit, the north half;

and the $800 mortgage given to Lewis covers the entire forty acres.

### CONCLUSIONS OF LAW.

1. That the Cass County Bank mortgage is void, except as to the mill ten acres, for the reason that the balance of the land was a homestead and the mortgage was not signed by defendant's wife, and that the sale thereof to plaintiff under decree of foreclosure conveyed no title whatever to the thirty acres.

2. That plaintiff, being a mortgagee in possession, should account only for the net proceeds of the property.

3. That plaintiff has a lien against the mill and the ten acres of ground on which it is situated for the amount of the Cass County Bank mortgage, as shown by the first finding of facts, and interest thereon at ten per cent per annum from May 22, 1873.

4. That plaintiff is entitled to a lien and decree of foreclosure on the north half of the forty acres for the amount of the $2,000 mortgage less the credits thereon, and the whole amount of said land for the amount of the $800 Lewis mortgage.

5. That plaintiff should not be allowed anything for insurance paid by him.

6. That interest on all of said amounts should be computed to date of trial.

7. That under the circumstances of this case it would be inequitable to permit plaintiff to recover anything for attorney's fee.

8. That defendant is entitled to credit on said sums owing to plaintiff the sum of $1,641.55, being the net profits received by plaintiff from said property, which is all he should be held to account for. I, therefore, recommend judgment against Thomas Nelson for the amount of the two notes, less said credits and profits, and a decree of foreclosure against both of the defendants on the north half of the land (that is,

of the forty acres) on the $2,000 mortgage given to plaintiff, and on the whole of said land on the $800 Lewis mortgage, except in each case the land sold to Shoemaker, and that lots five and six, in block nine, in the town of Carbon, on said land, being defendants' homestead, be not sold unless the balance fails to sell for enough to satisfy plaintiff's claim and costs, and that defendant have the same time in which to redeem from the Cass County Bank foreclosure as from the sale under the other two mortgages, and that plaintiff have judgment for one-half the costs of this action, and that defendant have judgment against the plaintiff for one-half the costs."

The plaintiff filed exceptions to certain portions of this report, which the court sustained to the following extent:

" That the report of the referee as to the seventh finding of fact be corrected as to the amount of receipts, deducting from the amount there stated by the referee, the sum of $200, the same having been doubly charged, as shown by said report, and also as to the amount of expenditures by adding thereto the sum of $338.94, being the taxes paid by the plaintiff."

The defendant also filed exceptions to certain of the findings of fact and conclusions of law of the referee, all of which the court overruled. The court, with the exceptions above named, confirmed the report of the referee and adjudged that the plaintiff recover on the two notes sued upon and the Cass County Bank foreclosure the sum of $7,046.74, with interest at ten per cent per annum, and that the mortgages described in plaintiff's petition and the amendment thereto be foreclosed.

The defendant excepted and appeals.

*Frank M. Davis* and *R. A. Moore*, for the appellant.

*J. H. Maley* and *McPherson & Scott*, for the appellee.

DAY, J.—I.   The cause was tried, as shown by the referee's report, on the 16th day of April, 1878, before chapter 145, of the laws of 1878, took effect, and is governed by the provisions of section 2742 of the Code.   It does not appear that any motion was made for trial upon written evidence, and hence the cause is not triable here *de novo*, but must be reviewed as an action at law, on errors duly assigned.   The findings of fact stand as the verdict of a jury, and cannot be disturbed unless clearly unsupported by the evidence.   The report of the referee as to the facts is not so wanting in support.

II.   The appellant has assigned and argued numerous errors, but a few of which it will be necessary for us to con-

**1. MORTGAGE: mortgagee in possession: rents and profits.**

sider in order to indicate our view of the entire case.   The referee found that the rental value of the mill during the time plaintiff had possession, from May 1, 1874, to April 16, 1878, was $1,200 per year. As a conclusion of law the referee found, however, that plaintiff, being a mortgagee in possession, should account only for the net proceeds of the property.   This conclusion was approved and confirmed by the court.   In this we think the referee and the court erred.   If the plaintiff had judiciously rented the premises to a third person he would have been chargeable only with the amount of rent received.   But when the mortgagee himself goes into possession a different rule applies, because the net proceeds are known only to the mortgagee.   And in such case he must account for the reasonable rental value of the premises.   In *Sanders v. Wilson*, 34 Vt., 318, it is said:   "When the mortgagee himself occupies, and especially when the premises are a farm in cultivation, upon which labor and expenditure are to be bestowed to produce annual crops and profits, the mortgagee will be charged with such sums as will be a fair rent of the premises, without regard to what he may, in fact, have realized as profits from the use of it.   The rule is founded in sound policy, for the reason that the particular items of expenditure, in labor or

otherwise, as well as the profits received, are wholly within the knowledge of the mortgagee, and if he is not disposed to render a full and honest account it would be impossible for the mortgagor to show them, or to establish errors in the mortgagee's account." To the same effect see also 1 Hilliard on Mortgages, Ch. 16, § 3; Daniel's Ch. Pr., 4th Ed., 2293; Washburn Real Property, 578; *Gordon v. Lewis*, 2 Sumner, 143; *Kellogg v. Rockwell*, 19 Conn., 446; *Trimbston v. Hamill*, 1 Ball & B., 379; *Bainbridge v. Owen*, 2 J. J. Marsh., 465; *Van Buren v. Olmstead*, 5 Paige, 9; *Strong v. Blanchard*, 4 Allen, 538. The authorities cited by appellee, properly understood, do not recognize a contrary doctrine.

(III.) It is claimed by the appellant that Barnett should be held responsible for the full value of the coal mines, without any allowance for the cost of mining and getting the coal to market. We do not think this rule is applicable to the circumstances of this case. The evidence shows that Barnett entered into the possession of the property supposing it was his own, under the Cass County Bank foreclosure. The land was coal land, and had been used as such by Wilson. Barnett did no more than to make the usual and ordinary use of the land. He was not a trespasser, in the ordinary acceptance of the term, nor did his use of the land constitute waste. We think he should be charged simply with the rental value of the land, and that in estimating this value the amount of coal mined may be considered.

(IV.) The referee found the following fact: "The mill has been suffered to run down since April, 1874, for the want of proper care and necessary repairs, and is now in bad condition, and I find the damage to mill for want of ordinary care and repairs to be $1,000; and I further find in this connection that Barnett treated the mill as his own property and was not guilty of any fraud or gross carelessness in the management thereof."

The report of the referee and the judgment of the court do not charge the plaintiff with the damage to the mill. In

this, we think, there was error. It was the duty of the plaintiff to take proper care of the premises, and to apply the proceeds, so far as necessary, to the making of repairs necessary for the prevention of damage to the property. As he was deriving a profit from the premises, and was not in possession for the mere accommodation of the owner, it was his duty to exercise reasonable diligence, and take ordinary care of the property. He cannot be exonerated from liability because he was not guilty of fraud or gross carelessness.

(V.) What we have said indicates our general view of the manner in which the plaintiff should account for the use of the premises in question. The facts are not sufficiently presented by the report of the referee to enable us to enter a final judgment in harmony with the law, as we regard it, applicable to the case. The referee has found the rental value of the mill to be worth $1,200, but has not determined which party, under this estimate, shall make repairs. This is a very important matter, and the evidence upon this question is conflicting. Further, the referee has found the rental value of the mill simply, and not of the land which was in plaintiff's possession. The cause must be remanded to the court below for a specific finding of the following facts: *First.* The rental value per year of the mill, and the other real estate in the possession of plaintiff, the plaintiff making ordinary repairs. *Second.* The amount of repairs other than ordinary made by the plaintiff each year, and not occasioned by his failure to exercise reasonable care of the property. The account will be stated as follows: The plaintiff will be charged with the annual rental value of the property for each year, less taxes paid during the year, and less the value of extraordinary improvements made each year, not occasioned by the plaintiff's failure to exercise reasonable care of the premises. Upon the amount of each year's rent so ascertained, from the end of each year to the date of final adjustment, interest will be charged to the plaintiff at the rate of six per cent. The plaintiff will also be charged with

Barnett v. Nelson.

the amount received on sale of lots on the mortgaged premises, with interest from date of receipt at six per cent. The plaintiff will be allowed the amount of the Cass County Bank mortgage, and the amount of the two notes held by him, with interest at the rate specified in the judgment and notes, to the date of final adjustment. The plaintiff will not be allowed for the amount paid on the insurance of the mill. He will be charged with the damage to the property resulting from his failure to exercise reasonable care of the property. If anything shall be found due the plaintiff under this adjustment, he will have foreclosure of his mortgages therefor, and an attorney's fee as specified in the mortgages.

VI. On the 25th day of October, 1878, the plaintiff filed a motion for the appointment of a receiver, which was sustained, and the court appointed Amos Thomas a receiver to take charge of the property in controversy, excepting defendant's homestead, manage the same, take care of the property, and hold the proceeds, and administer the further orders of the court. To this action the defendant excepted. On the 29th day of April, 1879, final judgment in the cause was rendered, the mortgages held by plaintiff were foreclosed, and special execution was ordered to issue for the sale of the mortgaged premises, and the receiver was ordered to retain and hold said property until the expiration of the time for redemption from sale under the judgment, unless sooner redeemed, and to account to the court from time to time for the rents and profits of said property, and to hold the same subject to the order of the court. To this action the defendant excepted. We need not determine whether it is competent in any case to appoint a receiver of mortgaged property pending foreclosure proceedings. For some suggestions on this subject see *Myton. v. Davenport*, 51 Iowa, 583.

No facts appear in this case which justify the depriving of the defendant of the possession of his property, and of

the right to control the profits, pending the statutory period of redemption. In appointing and continuing the receiver, the court erred.

REVERSED.