THE HYDE PARK SAVINGS & LOAN CO., APPELLANT, *v.*
COWLES ET AL., APPELLEES.

344

*Messrs. Nichols, Wood, Marx & Ginter*, for appellant.

*Mr. Franklin G. Krehbiel, Mr. Edward P. Reeder, Mr. Hugh K. Martin*, United States Attorney, *Mr. James E. Applegate, Messrs. Graydon, Head & Ritchey* and *Mr. Bruce I. Petrie*, for appellees.

MATTHEWS, P. J.   This is an appeal on questions of law and fact, and the issues were presented at the trial *de novo* on a stipulation of facts.

The only parties affected by our decision are the plaintiff, the owner of the mortgage sought to be foreclosed in this action, and Louis Oskamp, a judgment creditor.

Harold A. Cowles and his wife borrowed $9,000 from the plaintiff on September 2, 1955, and gave their note therefor, secured by the mortgage which plaintiff seeks to foreclose in this action.   This mortgage contained the usual provisions found in such mortgages, including a recital that the conveyance included "all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof." It also contained a covenant by the mortgagor that he would keep the premises in repair.

The mortgagor had leased the premises to one Ziegel for a period of three years, commencing on May 1, 1956, at a rental of $100 per month.   On October 11, 1956, he transferred and assigned all his right, title and interest in the rents accruing under this lease to the plaintiff as further security, and at the same time the lessee accepted the assignment and agreed to pay the rent to the plaintiff mortgagee.   In this lease there was a provision authorizing the lessee to make necessary repairs and deduct the cost from the rent.

Thereafter, that is, on August 6, 1957, the defendant acquired a judgment lien on the premises in the sum of $1,533.12.

The stipulation of facts discloses that the mortgagor was in default and had broken the provisions of the mortgage, and that the entire amount had been due during all this time.

In this situation, the lessee paid the rent to the plaintiff and the plaintiff paid the cost of the repairs. Finally, the lessee notified the plaintiff that certain repairs were needed to the roof, the floor and certain minor work on the furnace and some plumbing, totaling $1,204.21, and that unless these repairs were made he would vacate the premises and terminate the lease. The lessee had paid the entire rent to the plaintiff as he was authorized to do by the assignment, and therefore the plaintiff paid for these repairs. The mortgagor did not consent to the making of these repairs, but there is no suggestion that they were not necessary. Since the repairs were made, the plaintiff has collected from the lessee as rent an amount greater than the cost of the repairs.

On this statement of facts, it is the claim of Oskamp that in determining the amount of the debt secured by the mortgage, the amount paid for the repairs ($1,204.21) must be disregarded, but that credit for all the rent paid must be considered as a credit.

On the other hand, it is the contention of the plaintiff that the transaction must be treated as entirely separate and distinct from the mortgage debt, each of the parties, mortgagee and lessee, exercising rights expressly given by the mortgagor to it.

We think the latter contention is the sound one.

But it is urged that only a mortgagee in possession has authority to make repairs and add the cost to the mortgage lien. We do not think this principle is applicable to the facts, although it is worthy of note that there is a concession in the Oskamp brief that the plaintiff was a mortgagee in possession. As already stated, we think this transaction relating to the repairs and the payment therefor is based upon collateral agreements having nothing to do with the amount of the mortgage debt.

But it is pointed out that the plaintiff upon its books treated this as one transaction embracing the mortgage debt, the cost of repairs and payments of rent. We do not think this is of any legal significance. The plaintiff and the lessee were free to make whatever arrangement they desired relating to necessary repairs and the use of the rent to pay therefor, and the plaintiff was at liberty to adopt any bookkeeping system that it saw fit. The method it adopted correctly showed the balance due on the mortgage debt.

For these reasons, we are of the opinion that in calculating the amount of the plaintiff's lien, the costs of the repairs should be deducted from the rent collected by the plaintiff and the balance of the rent applied as a credit upon the mortgage debt.

A decree may be presented in accordance with this opinion.

*Judgment accordingly.*

LONG, J., concurs.

O'CONNELL, J., dissenting. The facts in this case disclose that Harold A. Cowles was the owner of certain real estate in Cincinnati, Ohio, and that he and his wife, Vivian Christine Cowles,. borrowed $9,000 from the plaintiff herein, giving the plaintiff a note for the amount secured by a first mortgage (September 2, 1955). This mortgage contained a provision that the premises would be kept in good repair. The defendant Cowles later (October 6, 1956) executed an assignment of the note in favor of the plaintiff. This assignment was agreed to by the tenant, Ziegel, who had a lease providing that necessary repairs should be made by the said tenant and deducted from the rents. These rents were collected by the plaintiff. In accordance with the terms of the lease, repairs were made until June 1958, when the tenant maintained that certain major repairs were necessary, and when he so informed the plaintiff.

The defendant Louis Oskamp obtained a lien against the property by certificate of judgment in the sum of $1,533.12 (August 6, 1957).

The defendant the United States of America obtained a similar lien by filing a certificate of judgment for $1,818.89 (August 10, 1957).

The defendant The Fifth-Third Union Trust Company obtained a similar lien by filing a certificate of judgment for $5,443.24 (September 24, 1959).

The plaintiff ordered and paid for repairs to the roof in the sum of $571, to the floors in the sum of $564.64, and for other work in the total amount of $1,204.21 (June 1958). This it did without consulting the defendant and owner, Cowles, on the threat of the tenant that he would move if these repairs were not made.

The amounts collected in rents by the plaintiff exceeded the amount of the repairs, which amounts were credited on the mortgage of the defendant Cowles, and the amounts spent on repairs were charged by increasing the amount due on the said mortgage after the payments were made.

The prayer of the plaintiff is for a judgment for $9,750.90 and interest, and for a declaration by the court that the plaintiff has a first mortgage lien on the premises described, that all liens be marshaled, and the property sold to satisfy the claims.

The matter in dispute is whether the cost of the major repairs, in the sum of $1,204.21, added to the balance of the mortgage account, take precedence over the prior liens (prior to the costs of the major repairs) of Louis Oskamp, the United States of America, and The Fifth-Third Union Trust Company, or whether only the unpaid balance on the original mortgage takes such precedence.

The trial court found that the plaintiff had obtained a good and valid lien on the premises involved in the sum of $8,370.20. (This amount represented the unpaid balance on the mortgage and did not include the $1,204.21 spent for major repairs.) The court further ordered the equity of redemption foreclosed unless the said sum was paid within fifteen days from the decree of foreclosure. The court further postponed consideration of the validity of the other liens on the said property and the other claims of the plaintiff until after the sale, at which time the priorities would be determined. It is from this finding by the court that this appeal has been taken.

The stipulation of facts indicates that the rent income exceeded the costs of these major repairs. There could never be any question about the right of the tenant to deduct the costs of repairs from the rent that he paid: however, repairs of such amount ($1,204.21) could not possibly have been deducted by the tenant under the circumstances. Therefore, the question is whether the plaintiff was justified in paying these costs from the rent account. If it were so justified, then the lien for payment for these costs supersedes the other liens: if it were not so justified, then this lien (for costs of major repairs) should be satisfied only after the other liens have been so satisfied.

However, there seems to be no grounds for the assertion by

the plaintiff in his brief that "the work was done under the provisions of the lease which would permit the tenant to make repairs and deduct the cost from the rent due." As a matter of fact, these repairs were not paid for by the tenant and deducted from the rent. The plaintiff, unless it be established as a mortgagee in possession, had no authority to make any repairs.

It might be said here that the facts in this case are somewhat unique. However, the authorities quite generally seem to hold that a mortgagee in possession (if the plaintiff was such mortgagee in possession) had not only the right, but the duty to make repairs.

From 36 American Jurisprudence, 848, Section 320, we learn that "although there is authority to the contrary * * * a mortgagee in possession has not only a right, but also a duty, to keep the premises in ordinary repair, so that he may be held liable for a failure to do so * * *"; that "what are necessary and proper repairs must depend upon the particular circumstances of each individual case"; and that "repairs made to render a house habitable * * * have been held reasonable."

It is difficult to determine from the stipulation of facts whether the major repairs were "necessary and proper." However, inasmuch as they affected the roof and the floor, the presumption would be that they were so necessary and proper. The presumption would likewise be that they had been made to "render the house habitable."

The English rule seems to be (9 Eng. Ru. Cas., 1508) that "a mortgagee in possession is not liable to keep buildings on the mortgaged property in repair, but is liable for an act of wilful waste committed." And in *Russell* v. *Smithies* (9 Eng. Ru. Cas., 508) the syllabus reads: "A mortgagee in possession is not liable to keep up buildings in as good repair as he found them, if the length of time will account for their being worse." Of course, there is nothing in these statements to indicate that a mortgagee in possession may not make repairs.

Now the authorities in this country hold somewhat differently. For example, in *Bowen* v. *Boughner*, 189 Ky., 107, 113, 224 S. W., 653, the court said that "the general rule seems to be that a mortgagee in possession is entitled to be allowed for

necessary repairs made by him for improvements in some instances," though for the payment for taxes and water rents, for protecting the title to the property and some times for insurance the said mortgagee could not be reimbursed. Likewise, in paragraph three of the syllabus of *Barnett* v. *Nelson*, 54 Iowa, 41, 6 N. W., 49, 37 Am. Rep., 183, it was held that "It is the duty of one so in possession [mortgagee] to keep the property in proper and ordinary repair, and he is liable for all damages caused by a failure to do so, without regard to the good faith with which he acted." There are similar holdings in *Miller* v. *Ward*, 111 Me., 134, 88 A., 400, 49 L. R. A. (N. S.), 122; *Toole, Recr.,* v. *Weirick,* 39 Mont., 359, 102 P., 590, 133 Am. St. Rep., 576; *Shaeffer* v. *Chambers*, 6 N. J. Eq., 548, 47 Am. Dec., 211; *Mortimer* v. *East Side Savings Bank*, 251 App. Div., 97, 295 N. Y. Supp., 695 (citing many cases); 49 L. R. A. (N. S.) 123; 7 L. R. A., 277. See, also, 3 Pomeroy's Equity Jurisprudence (4 Ed.), 2914, Section 1217. There are also many similar holdings on the subject of a mortgagee in possession in 27 Words and Phrases, 659 *et seq.*

So that the sole question remaining is whether the plaintiff in this case was a mortgagee in possession.

Now in some states, according to 3 Pomeroy's Equity Jurisprudence, 2910, Section 1215, "the mortgagee is entitled to possession at once upon the execution of the mortgage; that in the remaining states of the same class, he is entitled to possession only upon the mortgagor's default; and that in either case, upon thus acquiring the possession, he can retain it until the mortgage is redeemed. In all the states adopting the second system, the mortgagee is not entitled to possession, either before or after a breach of the condition. If, however, he actually acquires possession, with the consent of the mortgagor, or in any lawful manner, although the nature of his interest is not thereby altered, he is entitled to retain such possession until the mortgage is redeemed or paid." In Ohio, this second system has been adopted.

Now what is possession? Under the definition of the word (in law), Webster's New International Dictionary (2 Ed.) defines it as "* * * in general, all legal systems recognize as having possession him (as a thief) who has actual physical

control of a thing and holds it for himself * * *." Who, therefore, is a mortgagee in possession? According to 59 Corpus Juris Secundum, 391, Section 305, "The term 'mortgagee in possession' is applied to one who has lawfully acquired actual possession of the premises mortgaged to him, standing on his rights as mortgagee and not claiming under another title, for the purpose of enforcing his security on such property or making its income help to pay his debt."

Now under the Ohio law, the mortgagee cannot obtain physical control of the real estate either before or after the default, unless he does so with the consent of the mortgagor. Therefore, in cases arising in this state, the only possession that the mortgagee could have is constructive or virtual possession. So that it becomes necessary to ascertain what constitutes such constructive possession, and whether there was such constructive possession by the plaintiff appellant in this case.

Now in the same volume and page of Corpus Juris Secundum (following *Nelson* v. *Bowen*, 124 Cal. App., 662), we find that "the mere fact that the mortgagee receives the rents and profits does not constitute him a mortgagee in possession unless he takes the rent in such a way as to remove from the hands of the mortgagor the management and control of the estate."

In the case at bar, the assignment of the rents to the mortgagee certainly removed, to some extent, "from the hands of the mortgagor the management and control of the estate." However, the owner could still bring an action in ejectment against the tenant and for damages for waste or negligence against such tenant. Nor did this assignment confer on the mortgagee any duties and rights pertaining to the management and control of the estate.

Moreover, according to the finding in *Scott* v. *Hoboken Bank for Savings in City of Hoboken* (cited in 59 Corpus Juris Secundum, 393), 126 N. J. L., 294, 19 A. (2d), 327, whether the mortgagee is one in possession depends on the circumstances of the case.

In that case, there was not only an assignment of the rents from the owner to the mortgagee, but there was an agreement between the two that the mortgagee should have the power of entry, complete authority to collect the rents, to sue for them

and the right to reduce the rents. There was a provision for the disposition of the income "to pay the necessary running expenses of said premises, including necessary repairs and decorations, insurance premiums, water rents, and commissions for renting of said premises, and for collecting the rents thereof and for alterations, repairs or improvements * * *; to pay to the mortgagee the interest due on the bond and mortgage and to pay the taxes." Furthermore, under this agreement the mortgagee could "in its discretion make contracts for such alterations, repairs and such improvements to the premises as may be necessary, *in its own name* and shall in the first instance pay therefor."

The owner then appointed the mortgagee her attorney for the purposes mentioned and to enable it "more efficiently to carry out its duties as assignee herein mentioned." Thereafter, notices were sent to each tenant by the mortgagee to pay the rent to a representative of the mortgagee. From the time of the assignment, the owner had no voice or control in the management of the property. Indeed, the owner like the rest of the tenants, paid rent to the mortgagee's agent. In the opinion of the court these circumstances constituted the mortgagee as one in possession.

How different are the circumstances in the case before this court! Here, the only transfer of authority was the assignment of the rents without any other authority to exercise control. And to repeat from Corpus Juris Secundum, the mere receipt of the rents does not result in the mortgagee's status being a mortgagee in possession, unless these rents are received in such a way that the owner loses control over the estate. In any event, the plaintiff in this case needed a greater grant of authority than that obtained by an assignment of the rents in order to qualify as a mortgagee in possession. Since he was not a mortgagee in possession, he was without authority to make expenditures for repairs from the rent-income fund, thus increasing the balance on the principal of the mortgage. In the opinion of the writer, a decree similar to that entered in the Court of Common Pleas should be entered in this court.