Martha Ellen GAUMER, Appellee,

v.

HARTFORD–CARLISLE SAVINGS BANK, Appellant,

and

Jimmie W. Wiley, Appellee,

and

Louise Wiley n/k/a Louise Titchbourne, Defendant.

No. 88–1136.

Supreme Court of Iowa.

Feb. 21, 1990.

Robert M. Benton of Schooler, Stuyvesant & Benton, Carlisle, for appellant.

Stephen A. Hall of Hall & Schlenker, Indianola, for appellee Martha Ellen Gaumer.

Richard B. Clogg of Elgin, Clogg & Patin, Indianola, for appellee Jimmie W. Wiley.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This appeal involves a dispute as to the sufficiency of an amount tendered by a junior encumbrancer to a senior encumbrancer under Iowa Code section 654.8 (1987). The district court ruled that the amount tendered was insufficient. We agree and affirm.

The case was tried in equity. The facts are not disputed. Our review is de novo. Iowa R.App.P. 4.

I. *Background facts and proceedings.* Martha Ellen Gaumer and her late husband each held an undivided one-half interest in four parcels of Iowa real estate. Two of the parcels together comprise 260 acres and are known as "the 260." The other two parcels together comprise 130 acres and are known as "the 130."

In January 1978, defendant Jimmie W. Wiley and defendant Louise Titchbourne, who were then husband and wife, purchased all four parcels of the subject real estate from Gaumer and her husband's estate. The land was conveyed by warranty deed. Wiley and Titchbourne gave their vendors promissory notes for the purchase price, and the debts were secured by mortgages on both the 260 and the 130. The estate assigned its interest to Gaumer. We will refer to these mortgages as the "Gaumer mortgages," and to the debts as the "Gaumer mortgage debts."

In 1983 and 1984, Wiley and Titchbourne mortgaged the 260, but not the 130, to defendant Hartford–Carlisle Savings Bank (the bank.) These "bank mortgages" secured debts evidenced by a promissory note and are subordinate to the Gaumer mortgages.

By August 1986, Wiley and Titchbourne had defaulted on their promissory notes to Gaumer and the bank. In November 1986, Gaumer filed this action seeking judgment against Wiley and Titchbourne, foreclosure of the Gaumer mortgages, and appointment of a receiver to manage the subject real estate. At the December 1 hearing on the matter, the bank resisted appointment of a receiver. The district court ordered

that no party dispose of any assets of the litigation—including rents—pending decision on the application for appointment of a receiver, and the matter was continued to December 15. Despite the court order, Wiley received a $15,200 check from a tenant for rent of the subject real estate on December 1 and proceeded to spend the funds.

On December 8, the bank filed a cross-claim against Wiley on the promissory note it held. Gaumer then voluntarily dismissed her application for appointment of a receiver. On December 22, the bank applied for appointment of a receiver, and a receiver was appointed by the court on January 5, 1987. On February 2, the bank obtained a default judgment on its cross-claim against Wiley in the amount of approximately $191,000.

Wiley filed a petition for bankruptcy in United States Bankruptcy Court in March 1987. In his bankruptcy petition, Wiley claimed a forty-acre homestead exemption. On May 11, the bankruptcy trustee abandoned the subject real estate except for Wiley's claimed homestead. In June, Wiley platted his homestead out of the 130. The parties agree that the value of the homestead is $40,000.

On July 13, the bank sought modification of the bankruptcy court's automatic stay to allow a tender to Gaumer of the amount of the Gaumer mortgage debts under Iowa Code section 654.8. *See* 11 U.S.C. § 362 (relating to automatic stay in bankruptcy). On July 20, however, Gaumer released her mortgages as to Wiley's homestead. The release recited that it was given for consideration but, in fact, it was given for no consideration and with the admitted intention of preventing the bank from succeeding to Gaumer's interest in the homestead under section 654.8. Gaumer did not reduce the amount of the Gaumer mortgage debts by the value of the homestead so released.

The bank never objected to Wiley's discharge in bankruptcy, nor did it file a complaint in the bankruptcy proceeding regarding the homestead transactions. Wiley's debts were discharged in bankruptcy on August 3, 1987.

On October 23, the bank made its tender to Gaumer under Iowa Code section 654.8. The amount tendered was calculated as the amount of the Gaumer mortgage debts, less the $15,200 Wiley received for rent of the subject real estate in December 1986, and less the $40,000 value of the homestead released from the Gaumer mortgages by Gaumer for no consideration. Gaumer refused the tender.

By amended answer and counterclaim to Gaumer's petition in equity, the bank sought declaration of the parties' rights under Iowa Code section 654.8. The matter was submitted to the district court on stipulated evidence.

The district court ruled that the bank's tender was rightfully refused by Gaumer, reasoning that under section 654.8 Gaumer was not obligated to reduce the Gaumer mortgage debts by either the value of the homestead released from the Gaumer mortgages or the value of the rent Wiley received for the subject real estate in December 1986. The court entered a personal judgment for Gaumer against Titchbourne, ordered the Gaumer mortgages foreclosed, and dismissed the bank's counterclaim against Gaumer.

The bank appealed the dismissal of its counterclaim.

■ II. *Whether Gaumer must deduct $15,200 from the Gaumer mortgage debts to account for Wiley's violation of the district court's order.* Iowa Code section 654.8 provides:

At any time prior to the sale, a person having a lien on the property which is junior to the mortgage will be entitled to an assignment of all the interest of the holder of the mortgage, by paying the holder the amount secured, with interest and costs, together with the amount of any other liens of the same holder which are paramount to the person's. The person may then proceed with the foreclosure, or discontinue it, at the person's option.

The purpose of this statute is to allow a junior lienholder to protect its lien by satisfying one who holds a senior mortgage. *Grant v. Parsons*, 67 Iowa 31, 33, 24 N.W. 578, 578 (1885) (discussing statutory antecedent of section 654.8).

The bank asserts that Gaumer should be made responsible for the $15,200 rent that Wiley collected and spent, allegedly in violation of the district court's order. The bank argues that because Gaumer dismissed her application for appointment of a receiver, Wiley was able to avoid having to account to the court for violating the order. Therefore, the argument goes, Gaumer should be made responsible for the $15,200 by being required to reduce the Gaumer mortgage debts by that amount for purposes of tender under section 654.8.

The bank's argument is grounded on the premise that Gaumer, by applying for appointment of a receiver, assumed a duty to protect the rents and profits of the mortgaged property pending appointment of a receiver. The bank equates Gaumer's position with that of a mortgagee in possession. *See, e.g., Barnett v. Nelson*, 54 Iowa 41, 6 N.W. 49 (1880) (mortgagee in possession of mortgaged premises must exercise reasonable diligence in managing premises and account for rents and profits of premises); *cf.* Iowa Code ch. 680 (imposing similar duties on receiver).

We reject this argument. Gaumer was not a mortgagee in possession, she was not a receiver, and it is not even argued that she was paid any of the $15,200. Under these circumstances, Gaumer cannot be required to answer for Wiley's alleged defalcation.

The district court was correct in ruling that Gaumer need not reduce the amount of the Gaumer mortgage debts to account for the $15,200.

■ III. *Whether Gaumer must deduct $40,000 from the Gaumer mortgage debts to account for the release of Wiley's homestead from the Gaumer mortgages.* The bank contends that the district court erred in ruling that, for purposes of tender under section 654.8, Gaumer need not reduce the amount of the Gaumer mortgage

debts by the value of the security she released to Wiley for no consideration. The district court reasoned that Gaumer had the right to change the terms of her mortgage contracts with Wiley by releasing the homestead without regard to the bank.

Under the facts of this case, we agree that Gaumer owed no duty to the bank that would require her to maintain her interest in Wiley's homestead. Gaumer's contract was with Wiley, not the bank, and the release was accomplished prior to the bank's tender under section 654.8. If Gaumer wished to lessen her security and improve Wiley's financial situation by releasing the homestead from the Gaumer mortgages, that was her right. The fact that a receiver had been appointed to manage the mortgaged property did not affect this right.

Nevertheless, the bank argues that it is entitled to the remedy it seeks as a matter of equity. The bank argues that Gaumer's release of the homestead from the Gaumer mortgages impaired its rights by putting the homestead beyond its reach.

■ The short answer to this argument is that Wiley's homestead was already beyond the bank's reach, whether Gaumer released it or not. A junior encumbrancer whose lien does not extend to a debtor's homestead, but who succeeds to a senior encumbrancer's interest in a homestead through tender under section 654.8, may not, in any event, sell the homestead to satisfy the junior lien. This has been our long-standing interpretation of section 654.8 and its nearly identical antecedents. *See, e.g., Grant v. Parsons*, 67 Iowa 31, 33–34, 24 N.W. 578, 578–79 (1885). The bank was not prejudiced by Gaumer's release of a homestead that could never be sold to satisfy the bank mortgage debts, which were secured by mortgages on the 260 alone. *Cf. Dickson v. Chorn*, 6 Iowa (Cole) 19 (1858) (where debtor's homestead could not be made liable for debts owed plaintiffs, defendant creditor's release of mortgage on homestead did not prejudice plaintiffs).

This is not a case for application of the doctrine of marshalling assets.[1] That doctrine cannot operate to require Gaumer to apply the value of the released homestead in satisfaction of the Gaumer mortgage debts because the homestead is available to satisfy those debts only after all other property pledged for them is exhausted. *See* Iowa Code § 561.21(2). Gaumer or her successor in interest would be entitled and, indeed, required to satisfy the Gaumer mortgage debts from the non-homestead portion of the 130 and the 260 before resorting to the homestead, even if the homestead had not been released. The record suggests that the value of the non-homestead portion of the 130 and the 260 is sufficient to satisfy the Gaumer mortgage debts. Thus, even as successor to Gaumer's interest *as it existed prior to the release,* the bank could not sell the homestead to satisfy the Gaumer mortgage debts. The bank is in no worse position after the release than it would have been in had the release not been granted. *Cf. Tollerton & Stetson Co. v. Anderson,* 108 Iowa 217, 220–21, 78 N.W. 822, 823 (1899) (holder of junior lien on debtor's accounts acquired no rights against holder of senior lien on same accounts, where senior released mortgage on debtor's homestead in which junior held no interest; doctrine of marshalling assets not applicable); *Dickson,* 6 Iowa (Cole) 19 (general creditors acquired no rights against creditor who released mortgage on debtor's homestead; doctrine of marshalling assets not applicable).

The bank is not entitled to any equitable relief. The district court was correct in ruling that Gaumer rightfully refused the bank's tender.

AFFIRMED.

---

**1.** The doctrine of marshalling assets is an equitable doctrine which may apply when two creditors seek satisfaction out of the assets of their joint debtor, and one of the creditors can resort to two funds but the other has recourse to only one of the funds. Under the doctrine, the former creditor may be required to first seek satisfaction from the fund to which the latter creditor has no claim. *See* 53 Am.Jur.2d *Marshalling Assets* § 1 (1970). The object is to compel the former creditor to shape her remedy so as to protect, as far as possible, the interest of the creditor who may resort to only one fund. *See id.* at § 4. The doctrine has long been recognized in Iowa, but "it is never applied, unless it can be done without injustice to the creditor, or other party in interest, having a title to the double fund, and also without injustice to the common debtor." *Dickson v. Chorn,* 6 Iowa (Cole) 19, 32 (1858). Many of our cases indicate that this doctrine is not applied where to do so would interfere in any way with the debtor's homestead rights. *See, e.g., In re Butterfield's Estate,* 196 Iowa 633, 195 N.W. 188 (1923); *Tollerton & Stetson Co. v. Anderson,* 108 Iowa 217, 78 N.W. 822 (1899); *Dickson,* 6 Iowa (Cole) 19. Our homestead statute is to that effect as well. *See* Iowa Code § 561.16.